Paducah Lumber Co. v. Paducah Water Supply Co.

CASE 53—PETITION ORDINARY—DECEMBER 5.

# Paducah Lumber Co. v. Paducah Water Supply Co.

APPEAL FROM M'CRACKEN COURT OF COMMON PLEAS.

1. LIABILITY OF WATER COMPANY FOR FAILURE TO SUPPLY WATER FOR FIRE PROTECTION.—Where a water company has contracted with a city to furnish at all times a supply of water sufficient for the protection of the inhabitants and property of the city against fire, the company must answer in damages for loss by fire resulting from its failure or refusal to perform its contract; and in an action to recover such damages, the inquiry is, whether, considering the purpose, character and capacity of the water-works, and all the attending circumstances and agencies, the fire which destroyed the plaintiff's property could and would have been prevented or extinguished before doing damage if defendant had performed its contract.

2. SAME.—The fact that such a contract exempted the water company from liability in damages for suspending the water supply, when done for the purpose of making repairs or extending the works, and then only upon certain conditions, necessarily implies that the company was to be liable in the absence of such an excuse; and neither the provision that rent of the fire hydrants was to cease in case of a suspension of the water supply, for longer than five days, for the particular purpose mentioned, nor the reserved right of the city to rescind the contract for that cause, can be construed to release the company from liability for the non-performance of the contract while it is in force.

3. RIGHT OF ONE TO SUE UPON CONTRACT BETWEEN OTHERS FOR HIS BENEFIT.—An inhabitant of the city who has suffered loss by fire by reason of the water company's breach of its contract with the city may have an action against the water company without joining the city, as a party for whose benefit a contract is evidently made may sue thereon in his own name, though the engagement be not directly to or with him.

4. LIABILITY OF WATER COMPANY FOR BREACH OF CONTRACT TO FURNISH WATER.—Independent of the contract between the city and the water company, the plaintiff in this case had the right to sue for a breach of a distinct contract set out in the petition by which, in consideration of rent paid for the use of two hydrants on its own lot, the water company had agreed to furnish water directly to it.

Paducah Lumber Co. v. Paducah Water Supply Co.

HUSBANDS & HUSBANDS, GILBERT & REED for appellant.

1. This is not an action *ex delicto* to recover damages for a tort or for tortious negligence, but it is an action *ex contractu* seeking to recover for a loss occasioned by a breach of an express contract. Different and distinct rules as to damages govern in these two classes of cases. It is always competent for parties to contract in reference to contingent, uncertain or remote liability, and if they do so, their contract becomes the law of that case. (Shinkle v. City of Covington, 1 Bush, 618; Webb v. Rome, W. & O. Co., 49 N. Y., 420; Pa. R. Co. v. Hope, 80 Pa. St., 373; Milwaukee R. Co. v. Kellogg, 94 U. S., 474; 2 Thompson on Negligence, p. 849; Hadley v. Baxendale, 9 Exch., 341; Griffin v. Colver, 16 N. Y., 489; Leonard, &c., v. N. Y., &c., Tel. Co., 41 N. Y., 544; U. S. Tel. Co. v. Wengen, 55 Pa. St., 262; Rittenhouse v. Tel. Co., 44 N. Y., 263; Shearman & Redfield on Negligence, sec. 10.)

   Cases explained: Patch v. City of Covington, 17 B. M., 722; King v. Shanks, 12 B. M., 410.

2. While the contract made by appellee was nominally with the city, it was really and substantially for the benefit of the citizens and property-owners, and it is well settled that the person or persons for whose benefit a contract is made may maintain an action upon it for its enforcement or breach; but in addition to the contract with the city, appellee had made a collateral contract with appellant, and had built and rented to it two private hydrants to enable it the more speedily to protect its valuable mill property from fire.

BURNETT & DALLAM for appellee.

1. Whenever a municipal corporation undertakes to provide its citizens with water for domestic use or for fire protection, or establishes a fire department with the necessary apparatus for utilizing the water in case of fire, and appoints a fire chief and his aids, and procures fire engines and hose carts and rubber hose, and establishes rules and regulations for their government, it does so in the discharge of a political or governmental function. If any of the agents of such a municipality fail in the discharge of the duties intrusted to them in this regard, neither the city nor her agents are responsible to an individual injured. (Patch v. City of Covington, 17 B. M., 727; Wheeler v. City of Cincinnati, 19 Ohio St., 19; s. c., 2 Am. Rep., 368; Brinkmeyer v. Evansville, 29 Ind., 187; Western College of Medicine v. City of Cleveland, 12 Ohio St., 375; Pottinger v. Owensboro Water Co., Superior Court of Ky., Dec. 17, 1884.)

   In this case the water company is to be regarded as the agent of the city to supply water, and the city not being liable to its citizens for the failure of the agent to do as it had agreed to do, clearly the agent is not liable.

2. Though the contract between appellee and the city was for the benefit of appellant in common with all of the citizens, yet there is an utter want of privity between appellant and appellee, and appellant can not maintain this action for a breach of the contract. (Nickerson v. Bridgeport Hydraulic Co., 46 Conn., 24; s. c., 33 Am. Rep., 2, 7; Davis v. Clinton Water-works Co., 37 Am. Rep., 185; National Bank v. Grand Lodge, 98 U. S., 122; Vroonan v. Turner, 69 N. Y., pp. 283, 284.)

3. Even if appellee is responsible in damages for its failure to have the agreed quantity and head of water, the measure of damages contended for by appellant is contrary to all law and precedent. To authorize the recovery of damages for the omission to do an act which one has contracted to do, the injury complained of must be the direct, or, at least, the proximate and natural consequence of the act complained of. (Hadley v. Baxendale, 9 Exch., 341; Griffin v. Colver, 16 N. Y., 489; Bosworth v. Brand, 1 Dana, 377; Foster v. Lookout Water Co., 2 Lea., p. 42; Greenleaf on Evidence, secs. 256, 261.)

Additional authorities cited in petition for rehearing.

As to liability of defendant: 1 Dillon, Mun. Corp., secs. 473, 974, 971; Prather v. City of Lexington, 13 B. M., 559; Ross v. City of Madison, 48 Am. Dec., 361; City of Logansport v. Wright, 25 Ind., 515; Stackhouse v. City of Lafayette, 26 Ind., 22; Bailey v. Mayor of New York, 33 Am. Dec., 669; Heller v. Sedalia, 53 Mo., 159; s. c., 14 Am. Rep., p. 444; Jewett v. City of New Haven, 38 Conn., 368; s. c., 9 Am. Rep., 382; Tainter v. Worcester, 123 Mass., 311; s. c., 25 Am. Rep., 90; Fisher v. Boston, 104 Mass., 87; s. c., 6 Am. Rep., 196; Robinson v. Evansville, 87 Ind., 334; Wrightman v. Washington, 1 Blackf., 39; Atkinson v. Newcastle Water-works, 2 Ex. D., 441; Greenwood v. Louisville, 13 Bush, 228.

As to measure of damages: Sutherland on Damages, 76; Leonard v. New York Tel. Co., 41 N. Y., 544; Baldwin v. U. S. Tel. Co., 45 N. Y., 744; W. U. Tel. Co. v. McKinney, Texas Law Review, March 24, 1885, p. 173; Bodkin v. W. U. Tel. Co., 31 Fed. Rep., 134; King v. Shanks, 12 B. M., 420.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

The buildings, machinery and other property of appellant, a corporation engaged in the lumber and planing-mill business in the city of Paducah, having been, in 1877, destroyed by fire, it instituted this action to recover damages therefor of appellee, also a corpora-

tion, and the city of Paducah having, as alleged, re-
fused to join as plaintiff, was made likewise defendant
to the action, though no recovery against it is sought.

In the petition it is stated, in substance, that in
consideration of the grant by the city of Paducah to
appellee, as assignee of one Jones, of the franchise
and right to construct, maintain and operate, for the
term of forty years, water-works, including the laying
of pipes and erection of hydrants in all the streets,
avenues and public grounds of the city, and agree-
ment to pay forty dollars annual rent for each of one
hundred and fifty hydrants, besides the privilege given
to charge and collect of the inhabitants limited rates
for private use of water, appellee agreed to erect upon
a platform fifty feet high a stand-pipe twenty-two feet
in diameter and one hundred and seventy-five feet high,
with which was to be connected the conducting pipes
and hydrants mentioned, and also two pumping en-
gines, each having capacity to force into the stand-pipe
two million gallons of water every twenty-four hours,
and to keep a head of water sufficient to throw from
any eight of the hydrants simultaneously, and for five
consecutive hours at any one period of time, streams
through fifty feet of hose one hundred feet high, all
of which works were completed and put in operation
in 1885.

That appellee also agreed to have in the stand-pipe
and conducting pipes, at all times, a supply of water
sufficient to afford a head or pressure requisite for all
domestic, manufacturing and fire protection purposes
for all the inhabitants and property of the city, and
to increase the number and length of hydrants and

pipes when necessary to meet demands of the city
and citizens; that said contract was made with ap-
pellee by the city of Paducah for the use and benefit
of all its property-owners and inhabitants, and appel-
lant's property was, from 1885 until destroyed by fire,
in common with that of others, taxed at its full value
to raise money with which to pay said hydrant rents.

It is further stated, that under a contract directly
between them there had been erected previous to the
fire, on the same lot where the burned property was
situated, two hydrants, one within thirty and the
other seventy feet of the place where the fire orig-
inated, and connected by pipes with the water-main,
to be used by appellant to extinguish fires and for
steam purposes, for which it had been paying rent to
appellee, and that in consideration thereof appellee
had agreed to furnish and have ready at all times
water sufficient to throw streams through hose kept
by appellant in proper condition, to be connected
with the two hydrants the height provided for in said
contract between appellee and the city of Paducah;
that the fire originated in a wood building situated
on the lot of appellant and connected with its other
property, though occupied at the time by another;
but, said fire occurred without any fault or negligence
of appellant or its servants, and it could and would
have been extinguished before doing damage to the
property of appellant if there had been the stipu-
lated quantity of water in the stand-pipe and con-
ducting pipes, or the pumping machinery had been
in readiness to operate and the engineer and servants
of appellee had been present to set it in motion; for

immediately after the fire commenced, and before it had done any damage or extended to the premises then occupied by appellant, hose pipes in good order were attached to the two private hydrants, and carried to within five or six feet of the fire for the purpose of applying water to it. There were, besides, four or five double-nozzle fire hydrants, one within twelve, two within sixty feet of the property burned, and all near enough to extinguish fire on any part of said lot, and experienced firemen employed by the city of Paducah were present on the ground within ten minutes or less after the fire started, and had hose suitable and in good condition attached to the hydrants; but that notwithstanding it had, since 1885, been receiving from the city of Paducah the agreed hydrant rent, and from numerous inhabitants thereof, appellant included, large sums of money for water furnished to them, appellee, in violation of said contract, and without excuse, refused and neglected to have, when said fire commenced, the stipulated quantity of water in the stand-pipe, and for more than one hour after the alarm was given and the city firemen had arrived and attached hose to the hydrants, neglected to start the pumping machinery, or to have its engineer or other servant present for the purpose, so that, although when water was in the stand-pipe at the height of seventy-five feet, streams could be forced through hose attached to the two private hydrants seventy-five feet high, and higher when pressure was applied by the pumping machinery, the streams passing through the hose, when applied at incipiency of the fire, did not reach ten feet, and were so weak as to be utterly use-

less, nor was there sufficient head of water to force a stream through any kind or length of hose as much as twenty-five feet, by reason of which refusal and neglect appellant's property was burned and destroyed.

The grounds of demurrer are, in substance, that the facts stated in the petition and amendments do not constitute a cause of action in favor of the plaintiff against the defendant, which we will treat as involving two questions: (1) Whether there is vested in the plaintiff, appellant, such legal interest in the contract between the city of Paducah and the defendant, appellee, as to authorize it, in any event, to prosecute an action in its own name and for its own benefit. (2) Whether appellee can be legally made liable in damages for the alleged breach of contract.

Clearly appellant had a right to sue for a breach of the distinct contract set out in the petition, by which, in consideration of rent paid for use of the two hydrants on its own lot, water was agreed to be furnished directly to it by appellee. But we will consider the two questions just stated as they arise on the contract between appellee and the city of Paducah.

Authorities in some of the States hold the general rule to be that the plaintiff in an action on contract must be a person from whom the consideration actually moved, and that a stranger to the consideration can not sue on a contract. But we think if there be, in fact, consideration for a promise or engagement made for the benefit of the person who sues, it is not essential for it to have passed directly from him to the person sued. It is not, however, important whether this case either comes within what is else-

where laid down as a general rule, or is an allowable exception to it, for this court has held the doctrine well settled a party for whose benefit a contract is evidently made may sue thereon in his own name, though the engagement be not directly to or with him (Smith v. Lewis, 3 B. M., 229; Allen v. Thomas, 3 Met., 198), which practice is not only in accordance with the rule found in Chitty on Pleading, but seems to be required by section 18, Civil Code, that in express terms provides every action must be prosecuted in the name of the real party in interest, except that under section 21 a fiduciary or trustee *may* bring an action without joining with him the person for whose benefit it is prosecuted.

It thus follows that if the city of Paducah had power to make the contract as well for the personal benefit of its several inhabitants as for purely municipal purposes, and did so make it, appellant, being the real party in interest, became owner of the property destroyed, has the right to prosecute the action in its own name, if maintainable at all, and the city of Paducah, though made so, is not even a necessary party, because whatever interest it may have, or injury it may have sustained, is entirely distinct, if not remote.

Conceding, as must be done, existence of the alleged power of the city of Paducah under its charter to enter into a contract with another for construction and operation of water-works, the right and also duty attached to make it for the personal benefit of inhabitants within its corporate limits; for supply of water in a city for domestic and manufacturing purposes, and as safe-

guard against injury to or destruction of private property by fire, is always in such cases the main inducement, the need of the municipal corporation itself for water supply being comparatively little. Besides, it is manifest the principal source .of expected profit to appellee was the money to be collected by imposition of the special taxation, and for private use of water with which to pay for service in supplying it for use of the inhabitants and protection of their property from effects of fire. And it being alleged in the petition, and also in effect provided in the ordinance of the city council that contains the terms and conditions of the contract, that it was made for the benefit of the inhabitants, it seems to us that if appellee can be made answerable in damages at all, it is liable to appellant upon the facts stated in the petition.

·It is a rule co-existent with contracts that a party who has performed his part is entitled to reparation in some form for breach to his injury by the other. In equity he may sue for specific performance or rescission, neither of which is an appropriate or adequate remedy when the subject-matter of a contract is destroyed and no longer exists; but at the common law, where an actual injury to one of the parties has been caused by refusal or neglect of the other to do what he agreed to do, and received consideration for doing, damages commensurate with the loss thereby sustained may be recovered, and such right of recovery can not be regarded waived or relinquished unless clearly so provided in the contract.

It is not provided in the ordinance referred to, nor can it be fairly inferred, that appellee was not to an-

swer in damages for its failure or refusal to perform its contract. The provision on that subject is that appellee shall have the right to shut off water temporarily for the purpose of making repairs or extension of the works, and shall not be liable for any damages occasioned by such temporary suspension, provided notice is given of the intention to shut off the water, and such repairs or extension are made with due diligence and without delay; but that if at any time the supply is shut off from any cause for more than five days, rent for the fire hydrants shall cease during the period of such suspension. It is further provided, that if appellee fail for five months to furnish an adequate supply of water for fire or other public or private purposes, the contract is to be void and the franchise forfeited. As, under the contract, exemption from liability in damages for shutting off or suspending the water supply exists only when done for the special and temporary purpose of making repairs or extension of the works, and not then unless notice is given, and such repairs and extension are made with due diligence and without delay, the necessary inference is that appellee was intended to be, and according to a fair interpretation must be, regarded liable in the absence of such excuse; for manifestly neither the provision for rent of the fire hydrants to cease in case of a longer than five days' suspension of the water supply for the particular purpose mentioned, nor the reserved right of the city of Paducah to rescind the contract for the cause stated, was intended by the parties, or can be properly construed, to release appellee from liability, or deprive the city of Paducah or its inhabitants of remedy for non-

performance of the contract while it is in force. The rule laid down in the leading case of Hadley v. Baxendale, 9 Exch., 353, is that "when two parties have made a contract which one of them has broken, the damages which the other ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered as arising naturally—that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in contemplation of both parties. at the time they made the contract as the probable result of a breach of it." This rule, which has been generally adopted and approved in the United States, is applicable and useful in determining the question of legal liability as well as in fixing the measure of damages in case of breach of contract; "for parties, when they enter into contracts, may well be presumed to contemplate the ordinary and natural incidents and consequences of performance and non-performance." (Sutherland on Damages, volume 1, p. 77.)

It is, however, argued the damage sustained by appellant was not the natural and proximate consequence of the neglect complained of, and, therefore, no recovery can be had, and the case of Patch v. City of Covington, 17 B. M., 722, is cited to sustain the position. There the action was to recover in damages the value of a house destroyed by fire in consequence of failure on the part of the city of Covington to keep its public cisterns in repair, and to provide the fire company with hooks, ladders and other necessary apparatus. The fire originated in a building adjacent to that of the plaintiff; the firemen had reached the

house before the flames were communicated to it, and, as alleged, would have been able to save it, but for neglect of the city to keep sufficient water in the cistern. But the judgment dismissing the action was affirmed on the ground the cause of plaintiff's loss "was wholly disconnected from and independent of the city or its acts or omissions." That, unlike this, was an action against a municipal corporation for failure to perform what, at most, was an implied public duty, which, upon other than the grounds just mentioned, courts in several States have held can not be maintained. But whether the conclusion there reached was or not proper, the reason for it was not entirely pertinent ; for while in one sense the fire, which in that, as in this case, originated in an adjacent building, was the proximate cause of the house being destroyed, the complaint was not that the defendant was in any way responsible for the occurrence of it, but failed to perform what was assumed to be its contract duty to furnish water in cisterns with which to extinguish it, the immediate consequence of which failure was, as alleged, loss of the building. There is a clear distinction between occurrence of a fire, the origin of which is often unknown, and for which usually there attaches no legal liability to any person, and the extinguishment of it, which generally can be accomplished by application of water, that a party may, by contract, undertake and bind himself to supply in specified manner and time. It does not, therefore, make any difference in this case how or where the fire originated, provided appellant did not cause it, because the duty of appellee was not to prevent oc-

currence of it, but to keep the stipulated quantity of water in readiness to be applied to put it out.

Water-works, however costly and skillfully constructed and operated, are not potent enough to extinguish, with absolute certainty and at all events, every fire occurring in a city before destruction of, or serious injury to, the property ignited, nor are they ever made with such end in view; but it is entirely practicable by that means to supply water in such quantity and having such head or pressure as to usually extinguish a fire before serious damage is done when promptly and efficiently used; and parties to a contract like this must be presumed to have contemplated and agreed that such, in the natural order of things, would be the probable effect of a performance of it, else there would have been no rational motive, nor adequate consideration, for entering into it. But the degree of probability in every such case as this must of course depend upon the stage of the fire when water is applied, upon the efficiency of the firemen, and all other attendant circumstances and agencies favorable or adverse to arresting or extinguishing fires.

It seems to us if the contract before us is not to be treated as meaningless and totally ineffectual for every purpose, the parties to it must be regarded as having contemplated and assented to the consequences of non-performance, as well as the profit and advantage of performance, and, consequently, appellee is liable in this case for such damages as its failure or refusal to perform may have caused to appellant. The inquiry, therefore, is, whether, considering the pur-

pose, character and capacity of the water-works, and all the attending circumstances and agencies, the fire which destroyed appellant's property could and would have been prevented or extinguished before doing damage, if appellee had performed its contract; and as the facts alleged in the petition and amended petition constitute a *prima facie* cause of action, the lower court erred in sustaining the demurrer.

Wherefore, the judgment is reversed, and remanded with directions to overrule the demurrer, and further proceedings consistent with this opinion.

———

To a petition for rehearing, filed by counsel for appellee, Chief Justice LEWIS delivered the following response of the court:

It is not necessary to even consider whether a municipal corporation can be made liable for destruction by fire of property of its individual inhabitants, because that question is not before us. But even assuming no action could be maintained in that case, still the doctrine of *respondeat superior* would not, as contended, avail to relieve appellee of its own liability, because the relation of principal and agent does not exist in any sense between the city of Paducah and it. On the contrary, they entered into a contract, by which, for a valuable consideration, to be paid by taxation and by rents for private use of hydrants, appellee agreed, among other things, to keep a specified quantity of water in its stand-pipe at all times, except on particular occasions mentioned, none of

which existed when appellant's property was burned.. It is too plain for discussion that the city of Paducah had the power, and did make the contract for benefit of its inhabitants, and, consequently, each one of them has a right to sue and recover for an injury caused to him by breach of it.

Appellee did not covenant to prevent occurrence of fires, nor that the quantity of water agreed to be furnished would be a certain and effectual protection against every fire, and, consequently, does not in any sense occupy the attitude of an insurer; but it did undertake to perform the plain and simple duty of keeping water up to a designated height in the stand-pipe, and if it failed or refused to comply with that undertaking, and such breach was the proximate cause of destruction of appellant's property, which involves questions of fact for determination of the jury, there exists no reason for its escape from answering in damages that would not equally avail in case of any other breach of contract.

Petition for rehearing overruled.