CASE 42.—ACTION BY THE CARTWRIGHT CREEK TELE-
   PHONE COMPANY AGAINST THE CUMBERLAND
   TELEPHONE AND TELEGRAPH COMPANY.

## Cumberland Tel'p & Tel'g Co. v. Cartwright Tel'p Co

Appeal from Washington Circuit Court.

I. H. THURMAN, Circuit Judge.

Judgment for plaintiff. Defendant appeals.—Affirmed in part and reversed in part.

1. Pleading—Answer—Striking out Matter.—The court properly struck from an answer a paragraph merely pleading in affirmative form matters of defense put in issue by a traverse contained in a preceding paragraph.

2. Frauds, Statute of—Operation and Effect.—Where plaintiff's right to have their private telephone line connected with defendant telephone company's exchange was conferred by

contracts under which defendant obtained its franchises from a city and county, and conditioned on defendant's failure to build the necessary line and furnish plaintiff's telephone service, which contracts were in writing, one in the form of an ordinance, and the other as an order or judgment of the fiscal court, the statute of frauds did not bar plaintiff's right to compel defendant to make the connection.

3. Telegraphs and Telephones — Private Lines — Franchise.— Where a telephone company purchased from a city and county franchises to operate its system, agreeing to furnish any person for whom it might not construct a line, telephone service over the line constructed by such person, parties constructing for their private use and not for operation in competition with the company's system a connecting line were not required to obtain a franchise therefor.

4. Same.—Where, under its franchises from a city and county, defendant telephone company contracted to furnish any person for whom it might not construct a line telephone service over a line of his own construction, defendant could not, after standing by and seeing plaintiff's practically complete a private line, refuse to connect such line with its exchange on the ground that it was itself willing to build the line.

5. Same—Repudiation of Contract.—A telephone company accepting and enjoying franchises from a city and county for the operation of a telephone system was estopped to repudiate the provisions of the contracts evidenced by the franchises.

6. Trial—Transfer of Causes.—Where a complaint prayed that defendant telephone company be made to comply with the contracts under which its franchises were obtained by connecting plaintiff's private line with its exchange, and also demanded damages for being deprived of the use of the telephone resulting from defendant's refusal to make the connection, the two grounds of relief were not inconsistent, and it was not error for the court, following a trial of the issues of fact by the jury, to transfer the cause to the equity docket for the purpose of determining the equitable rights of the parties.

7 Damages—Punitive Damages—Breach of Contract.—Punitive damages are not recoverable for a mere breach of contract.

8. Telegraphs and Telephones—Breach of Contract—Failure to Furnish Service—Damages.—In an action against a telephone company for failing to connect plaintiff's private line with defendant's exchange, in accordance with the contracts under which its franchises were obtained, plaintiffs were entitled to recover such damages as would compensate them for the

Cumberland Tel'p & Tel'g Co. v. Cartwright Tel'p Co.

loss, if any, of the value to them of the telephone service they were entitled to receive of defendant, between the date of the completion of their private line and the time of the trial, less the rental cost to them, at the rate provided by the contract, of the transmitters and receivers that defendant would have been required to furnish them during the same time, such damages not to exceed the amount claimed in the petition.

FAIRLEIGH STRAUS & FAIRLEIGH and C. C. McCHORD for appellant.

POINTS AND AUTHORITIES.

1. Statement.

2. The motion of defendant that the court peremptorily instruct the jury to find a verdict for it should have been sustained. (Bastin Telephone Co. v. Richmond Telephone Co., &c., 117 Ky., 122.)

3. The instructions to the jury were erroneous. (Mayness' Damages, (6th Ed) 43; 2 Sutherland on Damages, (2d Ed) 390; 13 Ency. Pl. & Pr. (Cyc.), Subject "Damages," 113.)

4. The court erred in transferring the case to the equity docket after verdict and judgment at law, and in rendering a decree of specific performance. (Greenup County v. Maysville & Big Sandy R. Co., 88 Ky., 659; Bourbon Stock Yards Co. v. Woolley, 25 Ky. Law Rep., 478; 20 Ency. of Pleading & Practice, Specific Performance, 398; Seamore v. Harlan, et al., 3 Dana, 412.)

W. C. M.cCHORD for appellee.

SCOTT MAYES of counsel.

CLASSIFICATION OF QUESTIONS DISCUSSED.

The contract sought to be enforced was made by the fiscal court of Washington county and the city of Springfield for the benefit of the citizens of Washington county. They are the beneficiaries, and they have the right to maintain this action to enforce it, and to recover damages for its violation. (Paducah Lumber Co. v. Paducah Water Co., 89 Ky., 340; Duncan v. Water Co., 12 S. W., 557; Duncan's Exor. v. Water Co., 15 S. W., 523; Gorrell v. Supply Co., 46 L. R. A., 313.)

By the provisions of the contract appellant owed a duty to the public, and therefor any wilful violation of the contract on the

part of appellant, with the intent to oppress the public, is a tort for which exemplary damages may be recovered. (Sutherland on Damages, 99, 100, 101, 391, 392, 393, 394; Page on Contracts, 1572, and authorities there cited; Kentucky Telegraph Cases.)

OPINION OF THE COURT BY JUDGE SETTLE—Affirming in part and reversing in part.

Appellant owns and maintains a telephone system in the city of Springfield and upon certain public highways of Washington county, which it operated for several years without a franchise from either the city or county, but in 1905 it purchased at public sale, as the highest and best bidder, from both the city of Springfield and county of Washington, permanent franchises to operate and maintain its telephone system in the city and county, paying therefor to the city $1, and to the county $25. Appellant's purchase of the franchise from the city was made under an ordinance duly passed by the city council, and of the franchise from the county under an order, in due form, made and entered by its fiscal court. By the terms of its contracts with the city and fiscal court appellant agreed and undertook to construct and maintain an exchange in the city of Springfield, certain exchanges in Washington county outside of Springfield, and also certain designated lines in the county, on condition that it would secure rights of way, have the outside exchanges operated, and that it would in addition, and upon the terms expressed in the contracts, furnish any person or number of persons, for whom it might not construct a line or lines, telephone service over a line or lines of his or their own construction. These two contracts should be considered and construed as one contract. They provide that: "Any person or number of persons in Washington county who may not

reside on any of said purchaser's lines, and for whom the purchaser may not construct lines so as to connect with any of said exchanges, shall have the right to construct and maintain their own lines to within one and one-half miles of any of said exchanges, when the purchaser will connect such lines with the nearest exchange, the owner of said lines to have telephone service over the lines of said purchaser in Washington county, Kentucky, by renting from the purchaser a transmitter and receiver at the rate of $2.00 per year. The payment of the above rate shall entitle all subscribers to use all of said purchaser's lines in Washington county, Ky."

About the time appellant's franchises were obtained appellees, J. Richard Smith and others, citizens of Washington county, residing on the Smith's Mill turnpike—one of the roads on which appellant was not required by its contracts to construct or maintain a telephone line—desiring telephone service, advised appellant of their purpose to construct their own line and connect it with appellant's exchange at Springfield, and with that object in view appellees, for convenience, organized themselves into a partnership or joint-stock company called the "Cartwright Creek Telephone Company." Appellees claimed that a contract, to be signed by the company and members composing it and by appellant, was to be written by Edwards, appellant's managing agent, who assented to the construction of the proposed line. Acting upon the assurance thus received, and upon the privilege given them by appellant's contracts with the city of Springfield and the fiscal court of Washington county, appellees constructed the contemplated line, 5 miles in length, and to within one and one-half miles of Springfield, at a cost approximating $500. Appellant

refused, however, to connect the line thus constructed
with its exchange at Springfield, though requested by
appellees to do so, and that refusal was followed by
the institution of this action by appellees to recover of
appellant the damages sustained by them on account
of appellant's failure to connect the newly constructed
line with its Springfield exchange, and to compel it to
yet make such connection, as provided by its contracts
with the city of Springfield and fiscal court of Wash-
ington county.

Appellant's answer presented in separate para-
graphs the following grounds of defense: (1) A trav-
erse of the averments of the petition.   (2) That it was
ready and willing itself to construct a telephone line
along and over Smith's Mill Turnpike and to furnish
over such line telephone service to appellees at their
respective residences, but that appellees refused to
accpt such service, and that they (appellees) have no
right to construct a private telephone line and require
appellant to connect it with its Springfield exchange.
(3) That the alleged conditions imposed by the con-
tracts between appellant, the city of Springfield and
fiscal court and the agreement between its agent, Ed-
wards, and appellees with reference to the connecting
of their telephone line with appellant's Springfield
exchange, the latter being unwritten and not to be per-
formed within a year, and the first unsigned by appel-
lant, were within the statute of frauds and therefore
unenforceable.   (4) That appellee's telephone line on
the Smith's Mill Turnpike was constructed and is
attempted to be maintained without authority from
the fiscal court of Washington county, and without
legal right.  The circuit court, on appellee's motion
struck from the answer the second paragraph, which
was not improper, as that paragraph merely pleaded

Vol. 128.] JANUARY TERM, 1908. 401

in affirmative form matters of defense put in issue by the traverse contained in the first paragraph. The court also sustained demurrers to the third and fourth paragraphs of the answer which ruling was also proper. If, as claimed by appellees, their right to have their telephone line connected with appellant's Springfield exchange was conferred by the contracts under which appellant obtained its franchises from the city of Springfield and fiscal court of Washington county, and conditioned upon the failure of appellant to build the necessary line and furnish them telephone service, and these contracts were in writing and also recorded, one in the form of an ordinance and the other as an order or judgment, the statute of frauds would not bar appellee's right to the relief sought in the action.

It is further apparent that, if the right to construct and maintain appellee's telephone line and to connect it with appellant's Springfield exchange was conferred by the contracts under which the latter's franchises to maintain and operate its lines were obtained from the city of Springfield and the fiscal court of Washington county, as appellees' telephone line is to be operated for their private and exclusive use, and not for profit or in competition with the telephone lines or service of appellant, the law imposed upon them no duty to purchase from the fiscal court a franchise or privilege to construct or maintain their single telephone line. If this conclusion proves tenable, it would necessarily follow that the plea of the fourth paragraph of the answer constituted no defense to the action, and therefore appellees' demurrer to it was well taken. Such affirmative matter as was left in the answer, after the second paragraph was stricken out and demurrers sustained to the third and fourth, was

controverted of record, and on the trial that followed the jury returned a verdict in appellees' behalf for $1,000 damages, upon which judgment was duly entered. On appellee's motion and by order of the circuit court, the cause was then transferred to the equity docket, and thereafter a further judgment entered, the material part of which is as follows: "That the defendant, Cumberland Telephone & Telegraph Company, shall connect plaintiffs'. line with the defendant's exchange, at Springfield, Ky., and rent to the plaintiffs the necessary transmitters and receivers and furnish the plaintiffs telephone service over defendant's system in Washington county, Kentucky, on the payment of rental of $2.00 per year by plaintiffs to defendants as rental for such transmitters and receivers; and it is further adjudged that said connection shall be made with plaintiffs' said line not closer than one and one-half miles of defendant's telephone exchange at Springfield, Ky., and said connection shall be made within ninety days from this date."

Appellant, within three days after the return of the verdict of the jury, filed motion and grounds for a new trial, but the motion was overruled, to which ruling, and that of the court in transferring the cause to the equity docket, and also to the judgment then entered, as well as the judgment for damages upon the verdict, appellant excepted, and from the judgments in question was granted an appeal the prosecution of which presents for our consideration the several matters complained of as error.

Without attempting to discuss the facts in detail, we think it proper to say that as to the question of whether or not appellant's agent, Edwards, agreed with appellees to prepare a writing with respect to the connection of their line with its Springfield ex-

change, the evidence was so conflicting as to leave the matter in some doubt. But in our opinion the evidence as a whole tended to prove that appellees before commencing the work advised appellant of their purpose to construct the telephone line on the Smith's Mill turnpike in accordance with the provisions of the contracts under which appellant acquired its franchises from the city of Springfield and fiscal court of Washington county, and to connect such line with appellant's Springfield exchange, at a point not nearer than one and one-half miles of that city. It is, we think, also apparent from the evidence that, when so advised, appellant did not offer to construct the telephone line for appellees' use, or to furnish them the desired telephone service as it does other patrons; nor did it then inform appellees that it would not permit the connection of their telephone line with its Springfield exchange; but, on the contrary, gave appellees assurance that the necessary connection with its exchange would be made upon the completion of their line. The authority both to construct their line and connect it with appellant's exchange being conferred by the contracts under which appellant acquired its franchises, such right appellees could enforce because of the failure of appellant to construct such line, which failure was not cured by its offer to construct the line after its construction was commenced by appellee. The franchises were purchased by it at nominal prices and are far more valuable than the sums paid for them respectively. The readiness of the county and city, each to confer upon appellant a franchise at such an insignificant price, can be accounted for upon the hypothesis that the real inducement and chief consideration was the undertaking of appellant to provide persons throughout the

county, not residing upon its lines for whom it might be unwilling to construct lines with telephone service upon the terms and at the price expressed in the contract mentioned, upon their constructing and maintaining their own lines as therein provided.

If, upon being informed by appellees of their desire to secure its telephone service, appellant had expressed its readiness to construct the line for them, and had within a reasonable time undertaken and completed its construction and given the necessary connection with its Springfield exchange, we would have a different case to the one before us. The evidence in this case shows no such state of facts as we have supposed. On the contrary, it conduced to prove that appellant's agents instead of offering to construct the proposed line, stood by and saw appellees construct it to a point within one and one-half miles of the Springfield exchange, at a cost of $500 and with the expectation of securing connection with the exchange, and of having telephone service as provided by the contract in question by paying $2 per year rental for each of the transmitters and receivers used, instead of $1.65 per month as paid by regular subscribers where appellant constructs the lines. At this juncture appellant's agents apparently realized that it could afford to construct the line on Smith's Mill turnpike, and for the first time offered to do so. Whether this offer grew out of the discovery that if each person interested in the new telephone line would subscribe for one of appellant's telephones, at the customary rate of $1.65 a month, it could afford to construct its own line on the Smith's Mill pike, or from some other cause does not appear. At any rate, appellant's offer to construct the line in question came too late, for it was

after the work had been commenced, and practically completed by appellees.

There can be no doubt from the evidence that appellant refused to connect appellee's line with its Springfield exchange. This refusal was an evasion of the contracts under which appellant secured its franchises, and constituted a breach thereof. It is not true, as contended by appellant, that there is no such mutuality or privity between appellees and appellant, growing out of the contracts in question, as entitle the former to maintain this action. Numerous cases may be found holding that where a contract is made between two or more parties for the benefit of a third party, the latter may maintain an action on the contract. Blakeley, etc., v. Adams, 113 Ky. 392, 24 Ky. Law Rep. 263 and 324, 68 S. W. 393; Graves County Water Company v. Ligon, 112 Ky. 775, 23 Ky. Law Rep. 2149, 66 S. W. 725; Paducah Lumber Co. v. Paducah Water Co., 89 Ky. 340, 11 Ky. Law Rep. 738, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536; Duncan v. Water Co. (Ky.), 12 Ky. Law Rep. 824, 15 S. W. 523; Gorrell v. Supply Co., 124 N. C. 328, 32 S. E. 720, 46 L. R. A. 513, 70 Am. St. Rep. 598. In any event the contract between appellant and the fiscal court expressly gives appellees a right of action by the following provision: "The county of Washington, or any citizen thereof, having a cause of action, may institute an action for damages for the violation of any of the conditions of this order, or for a failure of the company to comply with the terms and conditions herein set out."

There is no merit in appellant's plea of the statute of frauds. In order for appellees to assert the rights conferred upon them by the contracts between the city, the fiscal court, and appellant, it was not neces-

-sary that another and independent writing should have been entered into between the latter and appellees; and as the contract between appellant and the city of Springfild was in the form of a printed and published ordinance, adopted by the city council, and that of appellant with the fiscal court was in the form of an order entered of record, it was not necessary that separate writings should have been entered into by the parties to make these contracts binding on appellant. Having accepted these contracts and enjoyed the franchises they granted, appellant is estopped to repudiate any of their provisions. Graves county v. Ligon, 112 Ky. 775, 66 S. W. 725, 23 Ky. Law Rep. 2149.

It was not error for the court to transfer the cause to the equity docket, following a trial of the issues of fact by the jury, for the purpose of determining the equitable rights of the parties. There was no necessity for an election by appellees as there was no misjoinder of causes of action. The relief sought was twofold: It was asked that appellant be made to comply with the contracts under which its franchises were obtained by connecting appellees' line with its exchange; and, as an incident of its refusal to comply with the contracts, appellee demanded damages for being deprived of the use of the telephone resulting from such refusal. The two grounds of relief were not inconsistent, consequently the court properly required of appellant compliance with its contracts.

We are of opinion, however, that the instructions to the jury erroneously stated the measure of damages. Punitive damages are not recoverable for a mere breach of contract. "Exemplary damages have been almost universally denied in action ex contractu. No more can be recovered as damages than will fully com-

pensate the party injured. There exists, however, an exception to this general rule in the case of a breach of contract to marry, in which exemplary damages may be allowed." 13 Cyc. 113; 2 Sutherland on Damages (3d Ed.), section 390. The recovery in this case should have been confined to compensatory damages, and, upon another trial, the jury should be instructed that "if they find for appellees they should allow them such a sum in damages, as they may believe from the evidence, will reasonably compensate them for the loss if any, of the value to them of the telephone service they were entitled to receive of appellant, between the date of the completion of the Smith's Mill turnpike telephone line to within one and one-half miles of Springfield, and the time of the trial, less the rental cost to them, at the rate of $2.00 per year each, of the transmitters and receivers that appellant would have been required to furnish them during the same time, that may have resulted from the failure, if any, of appellant to connect the Smith's Mill turnpike telephone line with the Springfield exchange, but the damages altogether, if any are allowed, should not exceed the amount claimed in the petition, to-wit, $1,000.00."

The instructions in other respects seem to be substantially correct.

The judgment, in so far as it compels appellant to connect appellees' line with its Springfield exchange, and to furnish for their use telephone service, is affirmed, but so much thereof as awarded appellees damages is reversed, and caused remanded for a new trial as to the question of damages consistent with the opinion.