CASE 29.—ACTION BY THE COMMONWEALTH AGAINST THE
ALBIN COMPANY.—March 3.

# Albin Company v. Commonwealth

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

From the judgment for plaintiff the Albin Company appeals—Affirmed.

1. Contracts—Rights of Third Party—Enforcement.—B., while negotiating with the prison commissioners for the hire of a number of convicts, gave a bond with the F. & D. Company as surety to secure his fulfillment of the contract. The contract was finally made with B. and M., but the bond was not changed. B. and M. sold their business and the contract to defendant, with the consent of the prison commissioners, on condition that they give a bond for the faithful performance of the contract. The F. & D. Company agreed to give the bond if some provision was made to pay the indebtedness of B. and M. to the State for the hire of the convicts, which was done by defendant paying part cash to the surety and giving notes for the balance, which were to be held in trust by the F. & D. Company's agent, and, if collected by him, were to be turned over to the State on the account of B. and M., as was the cash payment. Held, that the deposit of the notes was not merely indemnity, but was for the purpose of paying defendant's indebtedness to the State, and entitled the State to enforce such contract under the express provisions of Civ. Code Prac. section 18.

2. States—Fraud of Officers—Liability.—In such a case false statements by one of the three prison commissioners to defendants as to the value of the business they purchased are not the statements of the board; and the State is not responsible in damages for such false representations.

3. Corporations—Powers—Estoppel to Deny Corporate Powers.— A corporation organized under Gen. St. c. 56, giving it power

to acquire by purchase or otherwise, real and personal property
and to sell or convey the same, and whose business was
trading in merchandise, cannot, after buying business and
contracts with the plaintiff and giving notes for the purchase
price, which it was agreed should be collected and paid over
to plaintiff in discharge of the debt of the seller to plaintiff,
plead that its act was ultra vires in bar to the claim of
plaintiff.

KOHN, BAIRD, SLOSS & KOHN and MOSES PULVERMAN
for appellant.

N. B. HAYS, Attorney General, C. H. MORRIS and W. M.
SMITH for the Commonwealth.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

William Preston Bybee about the 6th day of February, 1899, was negotiating with the prison commissioners of the Eddyville penitentiary for a contract by which he was to lease or hire the services of not less than 50, nor more than 100, of the convicts, to be used for the manufacture of brushes for a period of four years from the 1st day of January, 1899, with the privilege of extending the contract for four more years, and for which he was to pay the Commonwealth 35 cents per day for each convict hired to him, the payments to be made on the 10th day of each month for the labor of the preceding month. The prison commissioners required, as a condition precedent to the proposed contract, the execution by the lessee of a bond conditioned in the sum of $3,000 for the faithful performance of the contract on the part of the lessee and the prompt payment of the contract price for the hired convicts. In order to meet the requirements of the commissioners, Bybee had prepared a bond conditioned as required with the Fidel-

ity & Deposit Company of Maryland as his surety, for which he paid to its general agent, Willis S. Mullen, the fee charged by the company for becoming surety on the bond in question. The prison commissioners did not make a contract with William Preston Bybee, but afterwards entered into a contract with Bybee & McClelland in all respects similar to that above described, which William Preston Bybee anticipated would be made with him alone. The prison commissioners, however, seem to have been under the impression, and to have claimed, that the bond prepared by William Preston Bybee, and on which the Fidelity & Deposit Company of Maryland was surety, was a good and sufficient bond to cover the contract made with Bybee & McClelland. The latter firm took charge of the convicts, installed the necessary machinery, and preceded with the manufacture of brushes under their contract until the 8th day of January, 1900, when, with the consent of a majority of the prison commissioners, they sold out their machinery, stock on hand, and lease contract to the Albin Company, which took charge of the business and proceded with the manufacture of brushes.

Before the prison commissioners would consent to the assignment of the contract of Bybee & McClelland to the Albin Company, they required of the assignee a bond conditioned for the faithful performance of its contract. In order to meet this requirement, the assignee applied to the Fidelity & Deposit Company of Maryland to go on its bond, but its general agent, Willis S. Mullen, declined to do so unless some provision was made for the payment of the indebtedness of Bybee & McClelland to the State of Kentucky, which at that time amounted to $2,492.72. Mullen did not admit that his company was surety

on the bond of Bybee & McClelland, but he recognized
the fact that the State claimed that it was the surety
for them by reason of its being the surety on the indi-
vidual bond of William Preston Bybee, before men-
tioned; and, being uncertain as to what would be the
outcome of the question, he declined to become surety
on the Albin Company's bond unless some provision
was made, as before said, looking to the final extin-
guishment of the indebtedness of Bybee & McClelland
to the State.   There is a good deal of contrariéty
of opinion between the parties litigant here as to
what was the legal effect of the acts done in reference
to securing the indebtedness of Bybee & McClelland,
and these various opinions will be noticed more at
length hereafter; but there is no dispute that the fol-
lowing receipt was executed by Willis S. Mullen, as
general agent of the Fidelity & Deposit Company of
Maryland: "Received of the Albin Company check
for eleven hundred and seven dollars and seventy-two
cents $1,107.72), made payable to William S. Mullen,
general agent of the Fidelity & Deposit Company of
Maryland, for payment to the Auditor of Public
Accounts of the State of Kentucky, for the account
of Bybee & McClelland, also fourteen (14) one hun-
dred ($100.00) dollar notes made by the Albin Com-
pany to Bybee & McClelland, said notes to be in-
dorsed by William S. Mullen, General Agent, pro-
ceeds of which notes, if collected by said Willis S.
Mullen, to be applied to the account of Bybee & Mc-
Clelland with the State of Kentucky; said notes to
be held in trust by said Willis S. Mullen, General
Agent, until they become due, or until said Bybee
& McClelland have settled their indebtedness to the
State.   Willis S. Mullen, Gen. Agt."   There is no
dispute that the trustee, Mullen, paid over to the

Commonwealth of Kentucky the amount of cash—$1,072.72—received by him at the time he executed the above receipt. This cash payment reduced the indebtedness of Bybee & McClelland to $1,385. Mullen having failed to pay over to the Commonwealth any of the proceeds of the 14 notes mentioned in the above receipt, the Commonwealth instituted this action against the Albin Company, W. P. Bybee, F. A. McClelland, the Fidelity & Deposit Company of Maryland, and W. S. Mullen, and in the petition set out the foregoing facts, praying a judgment against all of the defendants for the sum of $1,385 due to it from the firm of Bybee & McClelland. Mullen filed an answer, admitting that he held the notes mentioned in the receipt, and that he had collected two of them, and offered to pay over the amount collected, and to make such disposition of the notes as the court should direct. The Fidelity & Deposit Company of Maryland denied that any contract was ever made between William Preston Bybee and the prison commissioners of the Eddyville penitentiary; denied being surety on the contract of Bybee & McClelland; and also denied being indebted as surety or otherwise to the Commonwealth for the sum of $1,385 sued for, or any part of it. The Albin Company alleged that the 14 notes in question were deposited with Willis S. Mullen as indemnity merely against any lawful claim which the Commonwealth might have against it by reason of its suretyship on the bond of William Preston Bybee, and alleged that the prison commissioners did not make a contract with Bybee, and that he owed it nothing; that the contract of the prison commissioners was with Bybee & McClelland, and therefore its codefendant, the Fidelity & Deposit Company of Maryland, owed the Commonwealth nothing; that it had

been defrauded by Bybee & McClelland and the prison commissioners into buying out that firm, and it had been damaged in the sum of $11,000, which it made a counterclaim against the State of Kentucky, and a cross-petition against its codefendants Bybee & McClelland. It also set up an indebtedness of Bybee & McClelland of $500 for borrowed money, which it made a cross-petition against them. In addition, it pleaded that, under its charter, it had no authority to embark in the business of manufacturing brushes, and that all of its acts and doings with reference to the purchase of the contract of Bybee & McClelland and their machinery and stock on hand were ultra vires and void.

Upon the trial of the case the circuit judge held that the Fidelity & Deposit Company of Maryland was not a surety on the bond of Bybee & McClelland, and dismissed the petition as to it, and awarded a judgment in favor of the Commonwealth against the Albin Company for $1,385. This judgment it now seeks to reverse on this appeal.

The first question with which we are confronted is the legal effect of what was done at the time of the assignment by Bybee & McClelland to the Albin Company towards securing the payment to the State of the amount admitted to have been due to it from Bybee & McClelland. If, as is contended by the Albin Company, the deposit of the notes with Willis S. Mullen was alone to indemnify the surety company against the claim of the Commonwealth as surety for the money due by Bybee & McClelland, then the State's claim to this fund falls to the ground, because the trial court dismissed the petition as to the Fidelity & Deposit Company of Maryland, and the State is not complaining of this ruling. But, if the deposit was

made for the purpose of paying off the admitted indebtedness of Bybee & McClelland, then the Commonwealth, under section 18 of the Civil Code of Practice, is entitled to enforcement of the contract made for its benefit, although it was not a party to it.   Allen v. Thomas, 3 Metc. 198, 77 Am. Dec. 169; Smith v. Smith, 5 Bush, 625; Paducah Lumber Co. v. Paducah Water Co., 89 Ky. 340, 11 Ky. Law Rep. 738, 12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. Rep. 536; Louisville & Nashville Railroad Co. v. Schmidt, 112 Ky. 717, 23 Ky. Law Rep. 2097, 66 S. W. 629.   Willis S. Mullen testified positively that he demanded the payment to himself of the cash and the deposit of the notes as indemnity to his company, and we do not at all doubt his candor on this subject. That he had in mind only the indemnification of his company against a disputed claim of the Commonwealth may be readily believed; but what the other parties to the transaction had in mind is a different question.   It must not be overlooked that the Albin Company was purchasing the contract with the State, and the machinery and stock on hand of Bybee & McClelland, and for the purchase price it was to pay them $1,107.72 in cash, and to deliver to them 14 notes of $100 each.   These were the property of Bybee & McClelland, and two things could be accomplished by the action which was taken in regard to them; Primarily, the Fidelity & Deposit Company of Maryland was to obtain indemnification against the claim which it did not admit; but, secondarily, the debt of the State against Bybee & McClelland, admitted to be due and owing, was to be paid off and discharged, and in so doing the indemnification of the Fidelity & Deposit Company would be made perfect; for the assertion of this claim was what it feared.

The receipt itself clearly shows that both of these things were to be done. By its language it is specially provided that the $1,107.72 cash turned over to Willis S. Mullen was to be paid to the Auditor of Public Accounts of the State of Kentucky for the account of Bybee & McClelland. There is therefore no doubt as to what the parties meant to be done with the cash paid; nor is there much doubt as to what was meant to be done with the notes. The proceeds of these, if collected by Willis S. Mullen, were to be applied to the account of Bybee & McClelland with the State of Kentucky. In short, it is plain that the parties meant that what the Albin Company was to pay to Bybee & McClelland for their contract with the State, their machinery and stock on hand, was to be put in the hands of Willis S. Mullen to pay off and discharge the indebtedness of Bybee & McClelland to the Commonwealth. No other meaning can be obtained from the language used in the receipt; and this receipt constitutes the written understanding of all the parties in interest as to what was to be done with the trust fund of cash and notes placed in the hands of Willis S. Mullen.

It would be difficult to show a reason for making a distinction between the purposes for which the cash and the notes were placed in the hands of Mullen. Nobody disputes that all of the cash paid over to the trustee was to be by him turned over to the State in payment of the debt due by Bybee & McClelland, and nobody disputes that, as fast as the notes were collected (if collected at all), the money was to be paid over at once to the State. Now, if the cash was to be paid to the State, why is it that the notes were only held for indemnification? The notes were to be turned into cash, and when so converted the cash was

to be paid to the State; and, this being true, we are bound to conclude that the notes, like the cash, were placed in the hands of the trustee for collection, and, when collected, to be paid on the debt due by Bybee & McClelland to the State. Herman Albin, the president of the Albin Company, himself deposed on the subject in hand, and gave this account of what transpired between himself, McClelland, and Mullen as to the notes: "A. Well, we went to see Mr. Mullen—Mr. McClelland and I—and we asked Mr. Mullen, of the Fidelity & Deposit Company of Maryland, to go on our bond, as we understood they were on the bond for the brush company, and Mr. Mullen said he would not go on the bond unless the Bybee Company or William Preston Bybee—I don't know which the contract was in, but whichever it was—would first clear up matters with the State; and Mr. McClelland then said they had outstanding, owing them from different parties they had sold brushes to, and they hadn't collected for, that were due some of them, and, on the other hand, they themselves owed money that they wanted to use this money to pay off, and part would go to the State, and Mr. Mullen said: 'You let me hold some of these notes, and that will be security, and I will pay part to the State.' Mr. Mullen wanted it understood that, while he was not liable, still he wanted to be sure that he was not on the bond. Q. Mr. Mullen was acting as agent of the Fidelity & Deposit Company of Maryland? A. Yes, sir; he was acting for the Fidelity & Deposit Company of Maryland. He was their general agent in Kentucky. He then said: 'Mr. McClelland, you let me have those notes, and, when they are collected, I will turn them over to the State.'" This shows that McClelland and Mullen, as well as the Albin Company, under-

stood that the notes were to be collected and the proceeds turned over to the State, and in this way the Fidelity & Deposit Company of Maryland would be fully indemnified by the payment to the State of what was due it. The fact that it subsequently transpired that the State did not have a just claim against the Fidelity & Deposit Company of Maryland is immaterial. All of the parties in interest agreed that the cash and the notes deposited with Mullen by McClelland and the Albin Company were for the purpose of using the property of Bybee & McClelland to pay their just debt to the State. The Albin Company, through its president having consented that the notes executed and delivered by it to Bybee & McClelland should be assigned to Willis S. Mullen as trustee for the payment of the State's debt, no offset or discount which it afterwards had could affect the State's claim to the proceeds of the notes. Herman Albin, its president, was present when the assignment was made, and not only knew of it, but consented to it; for this was in large part in the interest of his company, because the Fidelity & Deposit Company would not agree to become its surety until the debt of the State against Bybee & McClelland was secured, so that it may be truly said the Albin Company had a beneficial interest in the assignment made to Mullen.

The counterclaim for damages against the State for the alleged fraud of its commissioner in falsely representing the value of the plant which Bybee & McClelland desired to sell was not sustained by the evidence. Herman Albin, who alone deposed upon this question, claims that J. M. Richardson, one of the commissioners, made false statements to him as to what Bybee & McClelland were making out of their contract; but it is difficult to understand upon what

principle the State can be bound by the individual acts of one commissioner out of three. The board of commissioners act as a body; and, assuming it to be true (which we do not decide, however) that Richardson made false statements to Albin as to the value of the plant of Bybee & McClelland, the Commonwealth cannot be made responsible in damages for these false representations.

We are of opinion that the plea of ultra vires is not sustained. The incorporators and stockholders of the Albin Company are Herman Albin, his wife, and a man by the name of Sales, all living in Louisville, Ky. Herman Albin is shown to be the dominant spirit and controller of the corporation. It was incorporated under chapter 50 of the General Statutes of Kentucky of 1888, and by its articles of incorporation has the power to make contracts and acquire by purchase or otherwise property, both real and personal, and sell, convey, and transfer the same, possessing the same powers as private individuals enjoy. The general nature of the corporation was to sell or trade in merchandise, principally furniture, carpets, personal and house furnishings, and such other wares that may be deemed advisable to be carried. Whether or not this corporation had the power to enter into a contract with the State and lease from it convicts, and carry on the business of manufacturing brushes, we need not now stop to inquire, for that question is not before us. The notes in question were given for the purchase from Bybee & McClelland of their machinery, stock on hand, and their contract with the State. Certainly the purchase of the machinery and the stock on hand was clearly within the purview of this trading corporation, which was authorized to buy both real and personal property and to sell and

vol. 128—20

convey it as individuals may.   Moreover, the corporation has, by its act, obtained possession of all the property of Bybee & McClelland, and thus deprived the State of all opportunity to make its debt out of them.   It cannot now plead ultra vires in bar of the State's claim for the notes delivered to Bybee & Mc-Clelland in payment for their property.

In the case of Underwood, etc., v. Newport Lyceum, 5 B. Mon. 129, 41 Am. Dec. 260, it was held that the Newport Lyceum, although it had no authority, under its charter, to issue bankbills or to do a banking business, yet it could not escape, under the plea of ultra vires, from paying a debt incurred in having bankbills and other material for carrying on the business of banking prepared and printed.  The court said that, although to carry on the business of banking was ultra vires, yet the defendant corporation had general power to purchase the articles named, and would have to pay for them, although it could not use them after they were purchased.   So, in the case at bar, the Albin Company had a general right to buy the machinery and stock on hand and the contract from Bybee & McClelland, and cannot escape paying the purchase price therefor, although it might be conceded that to carry on the business of broom making in the penitentiary would be beyond its power under its charter.   In Bigelow on Estoppel, p. 467, it is said: "However, if a contract with a corporation has been performed in good faith by the other party, and the corporation has received the benefits thereof, it probably cannot interpose against its duties assumed thereunder the defense of ultra vires."   In 29 Am. & Eng. Encyc. of Law (2 Ed.) tit. "Ultra Vires," p. 50, it is said: "It is now very well settled that a corporation cannot avail itself of the defense

of ultra vires when the contract has been in good faith fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract." In Green's Brice's Ultra Vires, p. 721, the law is thus stated: "There seems to be no substantial reason whatever for not extending the principle involved to all analogus cases. If liable in one case, why should not a corporation be always liable to refund the money or property of a person which it has obtained improperly and without consideration, or, if unable to return it, to pay for the benefit obtained thereby? To say that a corporation cannot sue or be sued upon an ultra vires arrangement is one thing; to say that it may retain the proceeds thereof which have come into its possession without making any compensation whatever to the person from whom it has obtained them is something very different, and savors very much of an inducement to fraud." In note A, Id. 729, the author has collated and discussed at great length many cases bearing upon the subject in hand; and it is there said: "In the United States the defense of ultra vires interposed against a contract wholly or in part executed has very generally been looked upon with disfavor." And this principle is upheld by Louisville Tobacco Warehouse Co. v. Stewart, 70 S. W. 285, 24 Ky. Law Rep. 934.

Upon the whole case, we are clearly of opinion that the judgment of the trial court in awarding the Commonwealth a judgment against the Albin Company for the amount of the notes and cash in the hands of the trustee, Willis S. Mullen, was correct, and it is therefore affirmed.