### Weber-Wolters Dry Goods Company v. Scott.

(Decided November 21, 1916.)

#### Appeal from Hickman Circuit Court.

1.  Contracts—Construction of.—A writing executed by the owner of a stock of goods providing that "I hereby turn over or assign to the Weber-Wolters Co. my stock of merchandise and fixtures for the benefit of my creditors in full of all accounts to date," was an assignment by the owner to the Weber-Wolters Co., of the stock of goods for the benefit of the creditors.

2.  Contracts—Agreement to Pay Debt of Another—Liability of Promisor.—If "A" should make a contract wth "B," based on a sufficient consideration, by which "B" assumed the payment of a debt "A" owed "C," "C" would have a right to bring a suit on the contract against "B" for the recovery of the debt, but "A" would have no cause of action against "B" for failing to pay the debt to "C" unless he could show that he sustained some damage on account of the failure of "B" to pay the debt.

ROBBINS & ROBBINS and J. W. BENNETT for appellant.

JOHN R. EVANS for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

Prior to October 21, 1914, Mrs. Maude H. Scott owned and conducted a store at Oakton, Ky., under the name of the Oakton Dry Goods Co. A considerable indebtedness to different merchants from whom she had bought goods accumulated and she was unable to pay it. Two of her largest creditors were the Denison-Gholson Dry Goods Co. and the Weber-Wolters Dry Goods Co. These creditors, as well as others, were pressing for payment of their debts, and on October 21, 1914, representatives of these two firms went to Oakton to see Mrs. Scott in reference to their claims. Weber, a member of the Weber-Wolters Co., represented his company, and John Samuels represented the Denison-Gholson Co. After an extended discussion of the business affairs of Mrs. Scott between these two men, Mrs. Scott and her husband, it was agreed by all parties that Mrs. Scott's liabilities exceeded very largely *her* assets, which consisted entirely of the stock of goods, and it was finally agreed between them that the stock of goods should be turned over for the benefit of the creditors to the Weber-Wolters Co. and the Denison-Gholson Co., so that these companies might take control of the stock of goods and dispose of the same for the benefit of all the creditors. We say this because, under all the surrounding circumstances, it does not appear that the writing which was then and there executed is susceptible of any other construction. This writing is as follows:

"Oakton, Ky., December 21, 1914. This is to certify that I hereby turn over or assign to Denison-Gholson Dry Goods Co. and Weber-Wolters Dry Goods Co. my stock of merchandise and fixtures, except one soda fountain and fixtures, for the benefit of my creditors, in full of all accounts to date; also mortgage to Denison-Gholson Dry Goods Co. for $270, with accrued interest.

"Oakton Dry Goods Co., Maude H. Scott."

On the back of the paper upon which this assignment was written the names of all the creditors and the amount due each were written, and this schedule showed that she owed to the creditors some two thousand dollars. On the day following the execution of this paper, which, as we construe it, constituted the Weber-Wolters Co. and the Denison-Gholson Co. assignees for the benefit of the creditors of Mrs. Scott, these two companies took charge of the stock of goods and proceeded to dispose of it at retail.

It also appears that on December 28, 1914, the Denison-Gholson Co. brought a suit against Mrs. Scott and secured an attachment, which was levied on the stock of merchandise on December 29, 1914. Mrs. Scott was duly summoned in this case, but did not file any answer or pay any attention to it, and on February 28, 1915, the attachment was sustained and the sheriff directed to sell the property attached, which it appears he did, and it was bought by one Pryor, representing the Denison-Gholson Co., for four hundred dollars. We merely mention this incident in passing as it does not affect any material issue in the case.

What disposition was subsequently made of this stock of goods does not appear, but it is made clear that Mrs. Scott has never paid to any of the creditors anything on their debts. When this writing was executed on December 21st and this stock of goods turned over to the Weber-Wolters Co. and the Denison-Gholson Co., Mrs. Scott says that she had no further interest in the business and had no concern in whether the creditors were paid or not and consequently did not bother herself any more about the matter until January, 1915, when she brought this suit against the Weber-Wolters Co. and the Denison-Gholson Co. In this suit, after setting up the writing of December 21st, she averred that the companies named "bought and took charge of said stock of goods and agreed to pay all of said indebtedness against said store to the date of this contract, and that they also agreed to release and count paid one mortgage of $270, with the interest accrued thereon, which the said Maude H. Scott and Arthur Scott executed and delivered on the 19th day of February, 1912, to the Denison-Gholson Dry Goods Co. . . . .

"That they took charge of said store through the defendant's company and ran the business from the 21st day of December, 1914, up until the 28th day of December, 1914, when they breached said contract, ignored same and failed and refused to pay said indebtedness of said Maude H. Scott and Arthur Scott, then due creditors up to said date.

"Plaintiffs say that they are now willing and ready to comply with said contract, but defendant's company refuses and fails and ignores and have violated same by said failure and refusal to pay said indebtedness against said stock of goods as per contract above stated. . . .

Now plaintiffs say that by reason of the failure of said Denison-Gholson Dry Goods Co. and Weber-Wolters Dry Goods Co. failing and refusing to comply with said contract, they have been damaged in the sum of $2,500.

"Plaintiffs state that defendant's company good and well knew of all the outstanding indebtedness against said stock of goods at the time they bought same and that they agreed and promised to pay off said indebtedness for and in consideration of said stock of goods located in Oakton.

"Now plaintiffs say that by reason of said breach of said contract by said defendant's company they are damaged in the sum of $2,500. Plaintiffs ask and pray judgment against the said defendant's company for the sum of $2,500, damages sustained by them by reason of said company's failing and refusing to comply with said contract."

The action, for some reason, was dismissed against the Denison-Gholson Co., and the Weber-Wolters Co., after filing a general demurrer which was overruled, filed its answer, which was merely a traverse of the allegations in the petition. After this the case went to trial before a jury, and after motions for a directed verdict, made in its behalf at the conclusion of the evidence for Mrs. Scott and again when all the evidence was in, had been overruled, the court instructed the jury as follows:

"Gentlemen of the jury, if you believe from the evidence in this case that defendant purchased the stock of goods in controversy from plaintiff under an agreement to pay the indebtedness owing by plaintiff on said goods, and if you further believe from the evidence that the defendant failed to carry out said agreement, then you should find for plaintiff the reasonable market value of said stock of goods at the time defendant took possession thereof. But unless you so believe, the law is for the defendant, and you should so find."

The jury, after hearing the evidence, returned a verdict in favor of Mrs. Scott for $675, and this appeal is prosecuted from a judgment on the verdict.

The whole case, as we think, turns on the proper construction of the writing executed on December 21st, and our construction of this writing is that the Weber-Wolters Co. and the Denison-Gholson Co. did not by its terms or by any reasonable inference therefrom pur-

chase the stock of goods. They merely took the stock of goods over as assignees for the benefit of the creditors of Mrs. Scott. This being so, it is very plain that Mrs. Scott stated no cause of action in her petition and the demurrer should have been sustained.

But even if it should be assumed that this. writing was as she contends, a purchase of the stock of goods, we do not understand how Mrs. Scott could have gone to the jury with her case, because there is not a particle of evidence that she suffered any damage whatever on account of any failure on the part of the Weber-Wolters Co., or the Denison-Gholson Co., either or both of them, to perform the terms of the contract, assuming it to be a purchase. If, as she claimed in her petition, these companies took the stock of goods under an agreement to pay her creditors, she could have no cause of action against them until and unless she showed that she suffered some damage on account of their failure to pay these creditors, and there is no evidence whatever that she has or will sustain any loss or damage on this account. It does. not appear that any of the creditors have made any effort whatever to collect their debts from her, or ever will do so.

If her construction of this contract were correct the creditors would have a right to collect their debts from these two companies who, under her construction of the contract, assumed for a valuable consideration to pay them, and who are, so far as the record shows, solvent and responsible concerns, while Mrs. Scott is insolvent. The situation is the same as if "A" should make a contract with "B," based on a sufficient consideration, by which "B" assumed the payment of a debt "A" owed "C.". In such a state of case "C" would have a right to bring a suit on the contract against "B" for the recovery of his debt; but "A" would have no cause of action against "B" for failing to pay the debt to "C" unless he could show he sustained some damage on account of the failure of "B" to pay the debt: Smith v. Lewis, 3 B. Mon. 229; Cumberland Tel. Co. v. Cartwright Tel. Co., 128 Ky. 395.

As we look at the matter, Mrs. Scott did not in her petition state a cause of action or in her evidence make out a case.

Wherefore, the judgment is reversed, with directions to sustain a general demurrer to the petition.