## HOLLOWAY *v.* MACON GAS LIGHT AND WATER CO.

A waterworks company operating under a franchise which gives to it the right to use the streets etc. of a city for the purpose of laying its mains etc., and carrying on its business, and which enters into a contract with the municipality to supply it, in its corporate capacity, with a sufficient supply of water from the city hydrants to extinguish fires, and to furnish private consumers, at fixed tolls, with water for domestic and manufacturing purposes, is under no public duty to a resident of the city to furnish the municipality with water to protect his property from loss by fire, and consequently can not be held liable to him, in an action of tort, for a fire loss sustained by him by reason of its failure to supply the city with water with which to extinguish the fire which consumed his property.

Argued December 7, 1908.—Decided April 14, 1909.

The question in this case was certified to this court by order of the Court of Appeals, which is as follows:

"J. D. Holloway *v.* Macon Gas Light and Water Company. In the foregoing case pending in the Court of Appeals, said court desires the instruction and decision of the Supreme Court as to the following question of law necessary to the proper determination thereof, to wit: Does a petition set out a good cause of action, which alleges: that the defendant is the Macon Gas Light & Water Company, which is a public-service corporation engaged in furnishing water to the City of Macon and to the inhabitants of that city for toll, and which has a monopoly of such business in said city; that the city itself and the inhabitants thereof are now and for the past four years have been utterly and entirely dependent on the defendant for water supply; that on November 26, 1891, the defendant entered into a contract with the City of Macon, respecting the furnishing of water to said city for a period of twenty

years, which has not expired (a copy of said contract, omitting certain immaterial parts, is hereto attached as part hereof and marked 'Exhibit A') ; that by the terms of said contract the defendant agreed to furnish water to said city for its benefit and for the benefit of its inhabitants for fire protection and for other purposes, it having therein been agreed by the defendant as follows : 'The party of the second part [the defendant herein mentioned] agrees to supply the party of the first part [the Mayor and Council of the City of Macon] with water in sufficient quantities and at all times for fire protection;' that the City of Macon has continuously paid the defendant, from revenues derived from the taxation of its citizens, for the services so contracted to be performed by the defendant; that on November 19, 1907, petitioner was a citizen and taxpayer of the City of Macon and owned and possessed a certain described house and contents, all of the value of $2,100, in said city, located in the area which defendant undertook to supply with water under said contract, and on said date a neighboring dwelling-house caught fire from causes unknown, but through no fault of petitioner; that said fire spread and was communicated to petitioner's house and the contents thereof, so that they were burned and destroyed to his loss in the sum of $2,100, despite petitioner's best efforts to prevent the spread of said fire; that before the fire was communicated to petitioner's house the fire alarm had been given and the city fire department had responded and reached the scene of the fire; after they reached the scene of the fire they connected the hose with the water-plug of the defendant, with the view of extinguishing the fire and preventing damage to petitioner's property, which could easily have been accomplished if the defendant had maintained at that time in its supply pipes the pressure it had agreed at all times to maintain; that at said time there was no appreciable pressure of water in defendant's pipes and not sufficient supply of water to enable the fire department to employ a steamer to extinguish or confine the fire; that despite the presence, willingness, and efficiency of the fire department, the house and contents burned; the defendant knew that neither the petitioner nor the fire department had any other supply of water than that the defendant had agreed to furnish; that the petitioner was without fault in the matter; that during all the times mentioned the defendant was enjoying

valuable franchises in its corporate existence and business, notably the occupancy of the public streets with its water-mains, on condition that it should perform the service undertaken under the contract; that the said contract was entered into by the defendant with the City of Macon by virtue of an act of the General Assembly approved September 29, 1891, amending the charter of the City of Macon, and said contract was designed for the service and protection of the taxpayers of the City of Macon as well as of the city itself; that by reason of said act of the General Assembly and of said contract defendant was obliged to perform a public duty and an express statutory duty toward the inhabitants, property owners, and taxpayers of Macon, and this duty the defendant did not perform, as averred above, to the special hurt, injury, and damage of petitioner; that defendant's negligence and breach of duty to petitioner consisted in its failure to have in any of the plugs near petitioner's said property an adequate supply or pressure of water for fire protection, and in failing to have the supply and pressure called for by said contract; and that there was not at said plugs and in the mains leading to said plugs sufficient water to cause a flow at the plugs, and defendant did not have at its plant a sufficient head of steam to give a flow of water?

"It is therefore ordered that a copy hereof, together with a transcript of the record, be certified to the Supreme Court.

"Exhibit A. Between the City of Macon and the Macon Gas Light and Water Company. State of Georgia, County of Bibb. This indenture, made and entered into this 25th day of November, A. D. 1891, by and between the Mayor and Council of the City of Macon, Georgia, party of the first part, and Macon Gas Light & Water Company, a corporation duly incorporated under the laws of the State of Georgia, party of the second part, witnesseth: that for and on consideration of the agreements and stipulations hereinafter set forth, and for certain sums of money to be paid as hereinafter provided, and by the authority conferred upon the said City of Macon by an act of the General Assembly which became a law on the 29th day of November, 1891, the following mutual agreements are entered into.

"Section 1. The party of the second part agrees to furnish the party of the first part with water in sufficient quantities and at all times for fire protection, sprinking streets, flushing sewers, and the

various other purposes in the city offices, police barracks, market, and engine-houses, and to supply the citizens of Macon for domestic and manufacturing purposes, during the continuance of this contract, at prices not to exceed the following rates: To the city in its corporate capacity, 200 fire hydrants similar to those already in use, at the rate of $40 per hydrant per annum. For each additional hydrant $37.50 per annum until the number rented by the city shall reach 300, when the price for all shall be reduced to $37.50 per hydrant per annum. . . The citizens for domestic or mechanical purposes shall be charged not more than the following rates: Private dwellings for domestic purposes only, through a single opening of one-half diameter per annum, $6. . .

"Section 2. It is mutually agreed that the said party of the first part shall pay for such water so supplied only as it is received, equal quarterly payments in the months of January, April, July, and October of each month and every year; and that no indebtedness is incurred by said City of Macon by this contract, other than that which may arise from failure on the part of the said Mayor and Council to comply with their contract. . . And for any failure on the part of the party of the second part to furnish the water for the purposes herein specified, it shall forfeit the rentals for double the time during which said failure has occurred; provided that temporary failure of supply in a portion only of the city, caused by breaks, repairs, or extensions shall not be considered a failure as above, nor for failure caused by the act of Providence.

"Section 3. The party of the second part agrees to furnish water as clear and as pure as can be obtained in sufficient quantity in practicable reach of the city; and if any part or all of such supply is taken from the Ocmulgee river, it shall be taken from a point well above the sewerage pollution, and shall be thoroughly filtered.

"Section 4. It is hereby agreed by the parties hereto, that, at any time during the continuance of this contract, the Mayor and Council of the City of Macon shall have the right to purchase the system of waterworks used in supplying the city, together with all rights, franchises, and good will, at a price to be agreed on at the time of the sale.

"Section 5. Since the present works of the party of the second

part have not the capacity to supply more than the present demand, the said party of the second part agrees to increase the pumping capacity to 5,000,000 gallons per day, and to increase the capacity of its mains by reinforcing those already in use by connecting with them larger pipes at various points, so as to secure better pressure and distribution, or erect filters of modern pattern and ample capacity to supply the needs of the city, and so arranged that they can be increased in the future as the demand increases.

"Section 6. It is further agreed between the parties hereto, that, as the population and territory to be protected increases, the said party of the second part shall extend its mains and erect hydrants along such streets as may be demanded by the party of the first part; provided the guaranteed income from consumers shall equal six per cent. upon the cost of such mains, and the said party of the first part agrees to rent a fire hydrant in addition to those already rented for 500 feet of main so extended. It being understood that the extensions so to be demanded must be along continuous lines of streets; and that not more than 10,000 feet or two miles of such extensions shall be demanded in any one year, except with the consent of the said party of the second part.

"Section 7. For the purpose of carrying out the terms of this contract, it is agreed by the parties hereto, that the use of the streets, lanes, alleys, and public grounds, as they now exist or hereafter may be altered, opened, or extended, shall be granted to the party of the second part during the continuance of this contract, for the purpose of excavating trenches and laying down or changing mains, valves, pipes, and conduits; provided always that in so excavating trenches and laying down or changing pipes, etc., that the grade of the street shall be adhered to, that the public work shall not be unnecessarily impeded or obstructed, and that the roadway shall be left in practically as good condition as it was before such excavating. . .

"Section 8. As the safety of the property of the citizens is largely dependent upon the proper and efficient management of the waterworks, and to that end rules and regulations are necessary to be observed, it is hereby agreed by the parties hereto that the right of the party of the second part to enter into the premises of the citizens, by its authorized agents, during the business hours of the day, for the purpose of inspecting the water fixtures used

by its customers, is recognized, and its right to shut off the water from any section of the city to make repairs and extensions, after notice where practicable, but without notice in emergency, as well as its right to refuse to supply customers who neglect to pay for their supply, or who refuse to have fixtures repaired to prevent waste, or who persistently waste the water after five days notice, and in accordance with the published rules of the party of the second part. And it is agreed that the said rules made for the management of said works from time to time, as are usual in waterworks management, and not in conflict with the city's ordinances or the laws of the State, must be observed. And to the end that the property and rights of the waterworks may be protected and waste of water prevented, the following ordinances shall be passed by the party of the first part and become a part of this contract." (Here follow a number of penal ordinances protecting the property and franchises of the company.)

The act of the General Assembly approved August 29, 1891, (Acts 1890-91, vol. 2, p. 566), referred to in the petition and exhibit as certified by the Court of Appeals, was, by its title, "An act to amend the charter of the City of Macon and the several acts amendatory thereof, so as to authorize the Mayor and Council of the City of Macon to construct a system of waterworks in said city at a cost not to exceed $412,000.00, to issue bonds to the amount of $350,000 for the purpose of constructing said system of waterworks for said city and to provide for the construction of a portion of said system of waterworks from the revenues derived from the sale of water therefrom, and to authorize the said Mayor and Council to make a contract with the Macon Gas Light and Water Company for the furnishing of water to said city, with the privilege of purchasing the waterworks used by said Gas Light and Water Company in supplying said city; to provide a commission for the negotiation and sale of said bonds, and for the construction and management and control of said waterworks; to grant certain powers and rights to said commission; . . to provide for an election for the purpose of procuring the assent of two thirds of the qualified voters of the City of Macon to the issuing of said bonds; to prescribe a method of registration for said election, and for other purposes." The act, after conferring authority upon the City of Macon to construct a system of waterworks and to issue

bonds, if authorized by the result of the election, as provided in the title of the act, toward payment for the same, and after creating "The Water Commission of the City of Macon" and prescribing the powers of such commission, among them being authority to sell the bonds if they should be issued in accordance with an election as provided for, in its 14th section contained the following provisions: "That at any time after the passage of this act, and before the election herein provided for shall be held, the Mayor and Council of the City of Macon shall have authority to make and enter into a contract with the Macon Gas Light and Water Company, for supplying the city with water for a period not to exceed twenty (20) years. . . There shall be embodied in said contract the privilege to the mayor and council to purchase the system of waterworks used in supplying the city, at any time during the period for which said contract is made, at a price to be agreed upon at the time of sale between the parties to said contract. . . [And] before said purchase shall be made, the assent of two thirds of the qualified voters of the City of Macon shall be obtained, in the manner now or which may hereafter be provided by law, to the incurring of the indebtedness for the purchase of said waterworks. When such contract is made, . . there shall be embodied in said contract a scale rate, showing the price to be paid by private consumers of water; and the mayor and council shall require bond with good security, in the sum of one hundred thousand dollars, for the faithful carrying out of said contract by the Macon Gas Light and Water Company; provided, that while said contract shall be made by the said Mayor and Council of the City of Macon with said Gas Light and Water Company, in the event that the provisions in this act to issue bonds for the erection of a system of waterworks by a commission, as herein provided for, shall receive the assent of two thirds of the qualified voters of the City of Macon, as provided for in section 13 of this act, then said contract shall no longer be of force and effect, but shall discontinue and be inoperative as though never made. If the provisions of this act, as to the issue of bonds, shall not be ratified by the said votes as required, then said contract shall still remain and continue in full force and effect." The act then provides that if no contract be entered into prior to the election for bonds, or if such election should not result in

favor of the issuance of bonds, then the mayor and council shall have authority to make a contract with the water company for the period of twenty years for supplying the city with water, under the same terms, conditions, and stipulations as contained in the act in reference to a contract made prior to such election.

*Hall & Hall* and *T. J. Cochran,* for plaintiff.

*N. E. & W. A. Harris,* for defendant.

Fish, C. J. (After stating the facts.) The great weight of authority is to the effect that a resident of a city can not recover of a waterworks company damages for loss by fire occasioned by the failure of such company to furnish, in accordance with its contract with the city, a sufficient supply of water to extinguish the fire. *Fowler* v. *Athens City Waterworks Co.,* 83 *Ga.* 219 (9 S. E. 673, 20 Am. R. 313); Nickerson v. Bridgeport Hydraulic Co., 46 Conn. 24 (33 Am. St. R. 1); Atkinson v. Newcastle and Gateshead Water Works Co., L. R. A. 2 Ex. D. 441; Foster v. Lookout Water Co., 3 Lea (Tenn.), 42; Davis v. Clinton Water Works Co., 54 Iowa, 59 (6 N. W. 126, 37 Am. R. 185); Ferris v. Carson Water Co., 16 Nev. 44 (40 Am. R. 485); Beck v. Kitanning Water Co., 8 Sadler (Pa.), 237 (11 Atl. 300); Mott v. Cherryvale Water Co., 48 Kans. 12 (28 Pac. 989, 15 L. R. A. 375, 30 Am. St. R. 267); Howsman v. Trenton Water Co., 119 Mo. 304 (24 S. W. 784, 23 L. R. A. 146, 41 Am. St. R. 654); Eaton v. Fairbury Water Works Co., 37 Neb. 546 (56 N. W. 201, 21 L. R. A. 653, 40 Am. St. R. 510); Fitch v. Seymour Water Co., 139 Ind. 214 (37 N. E. 982, 47 Am. St. R. 258); Wainwright v. Queens Water Co., 78 Hun, 146 (28 N. Y. Supp. 987); Bush v. Artesian etc. Water Co., 4 Idaho, 618 (43 Pac. 69, 95 Am. St. R. 161); Akron Water Works Co. v. Brownlees, 10 Ohio Cir. Ct. R. 620; Stone v. Uniontown Water Co., 4 Pa. Dist. R. 431; House v. Houston Water Works Co., 88 Tex. 233 (31 S. W. 179, 28 L. R. A. 532); Boston Safe Dept. &c. Co. v. Salem Water Co., 94 Fed. 238; Wilkinson v. Light, Heat, and Water Co., 78 Miss. 389 (28 So. 877); Britton v. Green Bay Water Works Co., 81 Wis. 48 (51 N. W. 84, 29 Am. St. R. 856); Nichol v. Huntington Water Co., 53 W. Va. 348 (44 S. E. 290); Town of Ukiah v. Ukiah Water etc. Co., 142 Cal. 173 (75 Pac. 773, 64 L. R. A. 231, 100 Am. St. R. 107); Allen & Cunry Mfg. Co. v. Shreveport Water Co., 113 La. 1091 (37 So. 980, 68 L. R. A. 650, 104 Am. St. R. 525); Metropolitan Trust

Co. v. Topeka Water Co., 132 Fed. 702; Blunk v. Dennison Water Supply Co., 71 Ohio, 250 (73 N. E. 210); Lovejoy v. Bessemer Water Works Co., 146 Ala. 374 (41 So. 76, 6 L. R. A. (N. S.) 429); Peck v. Sterling Water Co., 118 Ill. App. 533; Metz v. Cape Girardeau Water Works Co., 202 Mo. 324 (100 S. W. 651); Thompson v. Springfield Water Co., 215 Pa. 275 (64 Atl. 521); Hone v. Presque Isle Water Co. (Me.), 71 Atl. 769; Blenville Water Works Co. v. Mobile, 112 Ala. 260-266 (20 So. 742, 33 L. R. A. 59, 57 Am. St. R. 28); Becker v. Koekuk Water Works, 79 Iowa, 419 (44 N. W. 694, 18 Am. St. R. 377); Smith v. Great South Bay Water Co., 82 App. Div. 427 (81 N. Y. Supp. 812).

The reason for the doctrine is given in most if not all of these cases. This doctrine has not been adhered to in Kentucky, North Carolina, and Florida. Paducah Lumber Co. v. Paducah Water Supply Co., 89 Ky. 340 (12 S. W. 554, 13 S. W. 249, 7 L. R. A. 77, 25 Am. St. R. 536); Gorrell v. Water Supply Co., 124 N. C. 328 (32 S. E. 720, 46 L. R. A. 513, 70 Am. St. R. 598); Mugge v. Tampa Water Works Co., 52 Fla. 371 (42 So. 81, 6 L. R. A. (N. S.) 1171, 120 Am. St. R. 207). The Kentucky and North Carolina cases have been criticised in many of the cases wherein the doctrine above announced has been recognized and applied; and the reasoning in the Mugge case and that of the majority of the court in Guardian Trust Co. v. Fisher, 200 U. S. 57 (26 Sup. Ct. 186, 50 L. ed. 367), which seems to have been followed in Mugge's case, is criticised in the editorial note on the last-mentioned case in 6 L. R. A. (N. S.) 1171. There is nothing new to be added on the subject, and it would be supererogatory to set forth the reasons given by the various courts in sustaining the doctrine and of those repudiating it. Moreover, the question certified must, in our opinion, be solved by following a former decision of this court. In *Fowler* v. *Athens City Water-Works Co.*, supra, it was held: "Against a water company which is under a contract obligation with the municipal government (but no legal duty otherwise) to furnish a supply of water for use by the municipality in extinguishing fires, a citizen and taxpayer whose property has been consumed by reason of a breach of such contract obligation has no right of action, there being no privity of contract between the citizen and the water company, and mere breach (by omission only) of a contract entered into with the

public not being a tort, direct or indirect, to the private property of an individual." In that case, as we have ascertained from an examination of the original record of file in this court, the Mayor and Council of the City of Athens entered into a contract with one Robinson in 1882, whereby Robinson undertook that he would furnish at all times, for a consideration mentioned in the contract, all the water necessary for fire purposes; that he would establish fire hydrants to the number of 55, and would guarantee at all times a sufficient pressure to throw from any of these hydrants, through a one-inch nozzle and 50 feet of two and a half inch hose, five streams of water to the height of 65 feet. He further agreed to furnish consumers other than the city with pure and wholesome water at a rate not exceeding that in a list appended to the contract and made a part thereof. By the terms of the contract the city was to have the right to purchase Robinson's waterworks when the same should be completed, or at the end of each ten years thereafter, at a price to be fixed by arbitrators to be selected as provided in the contract. The city, in the contract, expressly granted to Robinson and his successors or assigns the exclusive right to erect and maintain waterworks as contemplated in the contract, "and also the free and unrestricted right and privilege at any and all times to lay, construct, maintain, repair, and tap all mains, pipes, hydrants, and other fixtures and appurtenances in, upon, under, and through any and all streets, avenues, lanes, alleys, roads, and bridges within said city." It was also stipulated in the contract "That it [the city] will pass, and at all times during the continuance of this contract maintain and enforce, such ordinances as may be necessary and proper to enable said contractor to construct and control his works and protect the same." It will be seen, therefore, that the decision in that case, when construed in the light of the facts upon which it was predicated, is controlling in the present one. For the court there not only held, treating the plaintiff's action as being one ex contractu, under the contract between the city and the waterworks company, that he could not recover, as there was no privity of contract between him and the company, but it also clearly and distinctly held that he could not recover if his action against the company were treated as being one ex delicto, that is, upon an alleged tort arising from a breach of a public duty which the company, under its contract with the

city, owed the plaintiff.    What was said by Chief Justice Bleckley
in denial of the right of the plaintiff to recover, upon the facts
alleged in his petition, if his action were treated as one sounding
in tort, was by no means obiter; for it is clear from reading the
statement of the case by him, and the opinion which he delivered
therein, that the court did not undertake to determine whether
the petition was intended to set forth a cause of action arising ex
contractu or a cause of action arising ex delicto.    But the court,
without construing the petition the one way or the other, simply
but decisively determined that whether the petition sounded in
contract or in tort it failed to state a cause of action; as the plain-
tiff could not recover on contract, because he was no privy to the
contract which the city made with the waterworks company; and
he could not recover in tort, because, under the facts alleged,
there was relatively to him no breach of a public duty by the
water company.    With reference to this last-mentioned view or
construction of the petition, the learned Chief Justice said: "There
being no ground for recovery, treating the action as one ex con-
tractu, is it better founded treating it as one ex delicto?    We
think not.    The violation of a contract entered into with the pub-
lic, the breach being by mere omission or nonfeasance, is no tort,
direct or indirect, to the private property of an individual, though
he be a member of the community and a taxpayer to the govern-
ment.    Unless made so by statute, a city is not liable for failing
to protect the inhabitants against destruction of property by fire.
*Wright* v. *Augusta*, 78 *Ga.* 241 [6 Am. St. R. 256]; Am. & Eng.
Enc. Law, vol. 7, p. 997, et seq.    We are unable to see how a
contractor with the city to supply water to extinguish fires com-
mits any tort by failure to comply with his undertaking, unless to
the contract relation there is superadded a legal command by stat-
ute or express law."    As will have been seen, the material facts
in the case at bar are practically the same as those in the *Fowler*
case.    While Robinson, the contractor in the *Fowler* case, was an
individual, and his successor and assignee, the Athens City Water-
Works Company, does not appear to have been incorporated, and
the contractor in the case now in hand was a corporation, this dif-
ference certainly would not alter the principle to be applied in
the present case; nor would such principle be affected by the fact
that in the case before us the contract between the City of Macon

and the waterworks company was expressly authorized by the act of 1891, amending the charter of the City of Macon, whilst in the *Fowler* case it does not appear that express legislative authority was given to the City of Athens to enter into the contract therein involved. Such city did not need express authority to make the contract; for it is well settled that under the "general welfare clause," usually found in the charters of towns and cities, such municipalities have the authority to enter into contracts and to exercise the power of taxation, within the limits fixed by the constitution, for the purpose of providing their inhabitants with water for domestic use, as well as to provide the city with water to protect its inhabitants from loss by fire. *City Council of Dawson* v. *Dawson Waterworks Co.,* 106 *Ga.* 696 (32 S. E. 907), and cit. The "general welfare clause" was contained in the charter of the City of Athens. The same right to use the streets of the city for the purpose of laying water-mains, etc., was given to Robinson, under the contract he made with the City of Athens, as was given to the waterworks company in the case in hand, under the contract it entered into with the City of Macon, and the obligations to be performed by the contractors in each of the cases were of the same character. To our mind, therefore, the *Fowler* case is, as we have already said, absolutely controlling in the present case, and requires that the question certified to this court by the Court of Appeals shall be answered in the negative, that is, that Holloway's petition set out no cause of action against the Macon Gas Light and Water Company. Here, as there, was a "violation of a contract entered into with the public, the breach being by mere omission or nonfeasance," which "is no tort, direct or indirect, to the private property of an individual, though he be a member of the community and a taxpayer to the government."

The plaintiff in error relies upon *Freeman* v. *Macon Gas Light & Water Co.,* 126 *Ga.* 843 (56 S. E. 61, 7 L. R. A. (N. S.) 917). It was there held: "When a private corporation, in the exercise of a franchise granted by a municipality, pursuant to a statute which confers upon it the right to use the streets of the city on condition that it will therein lay its mains and furnish the municipality and its inhabitants with a supply of water at fixed tolls, engages in the business of supplying the general public with water, it becomes liable as a public-service corporation for its wrongful

act in cutting off the supply of water which it is under the duty to furnish one of its patrons as a member of the public at large." This ruling, when applied to the facts of that case, is not contrary to what was held in the *Fowler* case. Indeed Mr. Justice Evans, who delivered the opinion, expressly states therein: "What we have said in no way conflicts with the principle decided in *Fowler* v. *Athens City Water-Works Co., 83 Ga. 219.* There the water company was sought to be held liable to a private citizen because of a failure to perform a duty owing to the municipality, under a contract with it to furnish it an adequate supply of water for fire protection. The city, in the exercise of its governmental functions, undertook to afford its citizens adequate fire protection—not by itself laying mains and maintaining a water supply plant, but by hiring one Robinson to do so." The ruling in the *Freeman* case was to the effect that when the water company, under the franchise which it had accepted and the contract which it had made with the municipality, engaged in the business of supplying the public at large with water for certain purposes, it became a public-service corporation, and, as such, was under a public duty to Freeman, one of its customers and a member of the public at large served by such company, to furnish him, as a private consumer, a sufficient supply of water in accordance with the contract, and that the breach of such duty, by wrongfully cutting off his supply of water, was a tort for the commission of which it was liable to him in damages. It will be readily seen that the facts in the *Fowler* case and those in the case with which we are now dealing are quite different from the facts in the *Freeman* case, and involve the application of different principles of law. In the *Freeman* case the duty which the water company assumed, by accepting its franchise, entering into the contract with the municipality, and engaging, as a public-service corporation, in the business of supplying the inhabitants of Macon with water for domestic purposes, was a public one which it owed to Freeman as a member of the public at large. As a public-service corporation, operating under a franchise which gave to it the right to occupy and use the streets, etc., for the purpose of laying therein its mains, etc., and carrying on its business, and engaging in the business of supplying the public at large with water at fixed tolls, it owed certain public duties to Freeman and every other member of the community

standing in the same relations to it, the breach of which constituted a tort. While the contract between the city and the water company in the present case is the same as the one involved in that case, the breach of duty relied on here is not the same as the breach of duty relied on there. The water company, as a public-service corporation, did not, under its contract with the City of Macon, nor, so far as appears in this case, in the conduct of its business, undertake to supply the public at large with water from the city hydrants for the purpose of extinguishing fires, nor did it undertake to so supply Holloway, the plaintiff in error, with water for fire protection. As to a supply of water from the city hydrants for fire protection, all that the water company undertook to do was to furnish such water to the city in its corporate capacity; and whatever breach of duty it may have committed by its failure so to do upon the occasion of the fire in question was a breach of the duty which it owed to the city, and not a breach of any public duty which it owed to Holloway and other members of the public at large of the City of Macon.