### 33416. MIREE et al. v. UNITED STATES OF AMERICA et al.

BOWLES, Justice.

Pursuant to Code Ann. § 24-3902, the Fifth Circuit Court of Appeals of the United States certified the above cases to this court for determination of certain state law questions. The various parties submitted a joint statement of facts as well as the proposed certified questions. Counsel have supplied this court with copies of the joint appendix filed in the United States Supreme Court while the cases were on appeal there for use as an underlying record by all concerned. The joint statement was adopted by the Fifth Circuit Court of Appeals.

*Joint Proposed Statement of Facts*

On February 26, 1973, a Lear jet crashed shortly after take-off from the DeKalb Peachtree Airport. The alleged cause of the crash was the ingestion of a large number of birds swarming over the airport and adjacent county garbage dump. Damage was substantial; all passengers were killed; the plane was destroyed; an individual on the ground was severely injured by burning jet fuel that fell from the disabled plane shortly before crashing; and property at the crash site was damaged. Separate actions were brought in the United States District Court for the Northern District of Georgia, Atlanta Division, by the survivors of occupants of the airplane, the burned victim, the insurer of the owner of the plane, and the owner of the property at the crash site. The various plaintiffs brought suit against DeKalb County, Georgia, and the United States of America, asserting theories of negligence, nuisance and breach of contract. Defendant DeKalb County moved to dismiss on the grounds that it was immune from suit under Georgia

law. The county's motion was granted and the plaintiffs appealed to the United States Court of Appeals for the Fifth Circuit.

The initial opinion of the Fifth Circuit Court of Appeals is reported at 526 F2d 679 (affirming in part and reversing in part); the en banc opinion of the Fifth Circuit Court of Appeals is reported at 538 F2d 643 (reversing the initial panel decision in part and affirming the district court); and the opinion of the United States Supreme Court is reported at 433 U. S. 25 (97 SC 2490, 53 LE2d 557) (vacating the en banc decision). On remand from the Supreme Court, the Fifth Circuit Court of Appeals ordered the questions involved certified to the Georgia Supreme Court.

The plaintiffs allege that the Federal Aviation Administration and the United States of America entered into a series of grant agreements with DeKalb County, Georgia. In such agreements DeKalb County was the "sponsor," and in return for the sponsor's assurances the United States of America granted funds to DeKalb County for various uses at DeKalb Peachtree Airport, including the construction of the jet runway involved in this litigation. It was alleged that the defendant DeKalb County, prior to the crash of the Lear jet airplane, maintained a garbage dump at its airport facility adjacent to said jet runway, and that the existence of the garbage dump with its contents attracted immense flocks of birds, all of which plaintiffs contend constituted an airport hazard.

In the series of grant agreements DeKalb County, as sponsor, agreed with the United States in part as follows:

"(1) . . . These covenants shall remain in full force and effect throughout the useful life of the facilities developed under this Project, . . .

"(2) The Sponsor will operate the Airport as such for the use and benefit of the public. . . That the Sponsor may prohibit or limit any given type, kind or class of aeronautical use of the Airport if such action is necessary for the safe operation of the Airport or necessary to serve the civil aviation needs of the public.

"(3) The Sponsor will operate and maintain in a safe and serviceable condition the Airport and all facilities

thereon and connected therewith which are necessary to serve the aeronautical users of the Airport other than facilities owned or controlled by the United States, and will not permit any activity thereon which would interfere with its use for airport purposes.

"(4) In addition, the Sponsor will not erect or permit the erection of any permanent structure or facility which would interfere materially with the use, operation, or future development of the Airport, in any portion of a runway approach area in which the Sponsor has acquired, or may hereafter acquire, property interests permitting it to so control the use made of the surface of the land.

"(5) . . . The Sponsor will not make or permit the making of any changes or alterations in the Airport or any of its facilities other than in conformity with the airport layout plan as so approved by the F. A. A., if such changes or alterations might adversely affect the safety, utility, or efficiency of the Airport.

"(6) Insofar as is within its power and to the extent reasonable, the Sponsor will take action to restrict the use of land adjacent to or in the immediate vicinity of the Airport to activities and purposes compatible with normal airport operations including landing and takeoff of aircraft."

The Grant Agreements in question also provided:

"2. The Sponsor shall:

"(a) begin accomplishment of the Project within Ninety (90) days after acceptance of this Offer or such longer time as may be prescribed by the F. A. A., with failure to do so constituting just cause for termination of the obligations of the United States hereunder by the F. A. A.";

"8. In addition the Sponsor shall:

"(g) Carry out such sanctions and penalties for violation of the equal opportunity clause as may be imposed upon contractors and subcontractors by the F. A. A. and the Secretary of Labor pursuant to Part II. Subpart D of Executive Order No. 11246; and in the event that the sponsor fails or refuses to comply with its undertakings, the F. A. A. may cancel, terminate or suspend in whole or in part any contractual arrangement it may have with the sponsor, may refrain from extending any further

assistance under any of its programs subject to Executive Order 11246 until satisfactory assurance of future compliance has been received from such applicant, or may refer the case to the Department of Justice for appropriate legal proceedings.". . .

"14. If at any time it is determined by the F. A. A. that there is any outstanding right in or to the Airport property, other than those set forth in Part II, paragraphs 7 (a), 7 (b), and 7 (c), the existence of which creates an undue risk of interference with the operation of the Airport or the performance of the covenants of this Part, the Sponsor will acquire, extinguish, or modify such right or claim of right in a manner acceptable to the F. A. A."

Plaintiffs claim that defendant DeKalb County knew of the existing bird hazard at DeKalb Peachtree Airport, in that such bird hazard had existed for a substantial period of time. Plaintiffs also claim that the existence of the birds attracted to the county's garbage dump created a substantial hazard to the safe operation of departing and arriving jet turbine aircraft. Based upon these allegations, plaintiffs contend that both the United States and DeKalb County were negligent in the operation and maintenance of the airport. Plaintiffs further allege that DeKalb County is liable for the maintenance of a public nuisance, and for breach of the grant agreements in failing to maintain the airport in an adequate and safe condition for the benefit of aeronautical users thereof and for the benefit of the public.

### Joint Proposed Certified Questions

1. In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of negligence?

(a) In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of negligence, if the negligence arose from the violation by DeKalb County of specific contractual and statutorily imposed duties?

2. In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of nuisance?

(a) In these particular cases, under Georgia law is DeKalb County immune from suit under a theory of nuisance, if the nuisance was created in violation of specific contractual and statutorily imposed duties?

3. In these particular cases, under Georgia law may these plaintiffs maintain an action as third-party beneficiaries based upon the alleged breach of the contracts between DeKalb County and the Federal Aviation Administration, or is DeKalb County immune from such claims?

(a) In these particular cases, if under Georgia law DeKalb County is not immune from suit based upon allegations of third-party beneficiary status under the grant agreement, are the plaintiffs in these cases intended or incidental third-party beneficiaries of the grant agreement covenants?

(b) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, will an action for personal injuries and property damage lie against DeKalb County where the damages arose from the alleged negligence of the county in carrying out or failing to carry out specific contractual and statutorily imposed duties?

(c) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, will an action for wrongful death lie against DeKalb County where those persons entitled to sue under the Georgia wrongful death statutes base their cases upon the alleged negligence of the county in carrying out or failing to carry out specific contractual and statutorily imposed duties?

(d) If DeKalb County is not immune from suit in these particular cases under said contract theory and if these plaintiffs are intended third-party beneficiaries, under Georgia law can those particular plaintiffs seeking recovery for wrongful death damages maintain such actions solely under a theory of breach of contract?

Following docketing in this court, appellants Southeast Machinery, Inc. and Fireman's Fund Insurance Company, and appellee Machinery Buyers

Corporation, moved for an order dismissing this proceeding for lack of subject matter jurisdiction, and requesting return of the certified questions unanswered to the certifying court.

*Disposition of Certain Parties' Motion To Dismiss*
Without addressing the question directly, we have heretofore impliedly concluded that we have jurisdiction of matters presented by certified questions by adopting appropriate rules; (See Supreme Court of Georgia Rules, § XXIII, Federal Appellate Courts, Rule 42, adopted September 20, 1977, 239 Ga. 878); and by answering certified question(s) in *McClintock v. General Motors Acceptance Corp.*, 240 Ga. 606 (241 SE2d 831) (1978).

Once it is agreed that on a particular issue in a particular case the federal court is to apply a state law, the problem arises of determining what the state law is that is to be applied. In Erie R. Co. v. Tompkins, 304 U. S. 64 (58 SC 817, 82 LE2d 1188) (1938), Justice Brandeis said that the federal court was to apply state law whether "declared by its legislature in a statute or by its highest court." The test has proven to be not quite that simple.[1] The federal court cannot decline jurisdiction of a case simply because it is difficult to ascertain what the state courts may thereafter determine the state law to be. Meredith v. City of Winter Haven, 320 U. S. 228 (64 SC 7, 88 LE 9) (1943)[2] The highest state court may not have addressed the issue or the last expression of a state's highest court is oftentimes difficult to ascertain. In such cases, the federal courts may look to such sources as the restatement of law, treatises and law review commentary, and the "majority

---

[1]See Rosenfield, Administrative Determinations as State Law under Erie v. Tompkins, 24 N. Y. U. Law Quarterly Review 319 (1949).

[2]The recent burgeoning of the abstention doctrines cast some doubt on whether the Meredith case still represents an absolute rule. See Wright, Law of Federal Court, 52 (2d Ed. 1970) and McNeese v. Board of Education, 373 U. S. 668 (83 SC 1433, 10 LE2d 622) (1963) fn. 5.

rule." Venuto v. Robinson, 118 F2d 679, 682 (3d Cir. 1941), cert. den. 314 U. S. 627 (62 SC 58, 86 LE 504) (1941). They may even guess what the high court's probable disposition might be. See Higginbotham v. Ford Motor Co., 540 F2d 762 (5th Cir. 1976).[3] Another approach is to certify the question to the highest state court.

The certification method is not without its weaknesses, and presents a dilemma to the state courts. We are reluctant to assert authority when not necessary to the proper functioning of our judicial system, and will not do so. In these circumstances, we are not called upon to decide a particular controversy nor an appeal from a lower court. What we say is not necessarily binding either in the result or in the application by the certifying court.

No federal rule requires use of certification. Lehman Brothers v. Schein, 416 U. S. 386 (94 SC 1741, 40 LE2d 215) (1974). Our answers to the questions involved merely present a view of the majority of the members of this court of what we conclude the law of Georgia on a given question to be.

Where the use of authority will further our judicial processes, improve and stabilize the administration of justice, and render a basic service to our people, we feel that we have a duty to serve. Our powers are equal to our duties.[4] In so doing, we do not encroach upon any other branch of government. But for diversity the exact questions presented would be before us for decision. Interpretation of law questions for the benefit of the overall judicial system deprives no citizen of any right.

We do not decide here whether or not Code Ann. §

---

[3]Their guess proved accurate in this instance. See *Ford Motor Co. v. Carter,* 239 Ga. 657 (238 SE2d 361) (1977).

[4]As of recent date sixteen states or more allow federal courts to certify cases to their courts. Only one of these appears to result from constitutional amendment. The others resulted from court rule or statute. Memorandum, National Center for State Courts, April 27, 1978. Ref. No. RIS 78.103.

24-3902 is constitutional,[5] but merely note that in adopting that Act, which was approved by the Governor, both other branches of state government have called upon this court to serve in such instances.

The motion to return the questions to the United States Court of Appeals unanswered is denied.

*All Certified Questions Answered Seriatim*

1. Yes. "A county is not liable to suit for any cause of action unless made so by statute." Code Ann. § 23-1502. The doctrine of sovereign immunity has continued in force in this state throughout most of its history. *Crowder v. Dept. of State Parks,* 228 Ga. 436 (185 SE2d 908) (1971), cert. den. 406 U. S. 914 (92 SC 1768, 32 LE2d 113). What was the sovereign immunity rule prior to 1973 has now been made a part of our Constitution, Code Ann. § 2-3401. *Sheley v. Bd. of Public Ed.,* 233 Ga. 487 (212 SE2d 627) (1975). See *Revels v. Tift County,* 235 Ga. 333 (219 SE2d 445) (1975).

"Counties are subdivisions of the state government to which the state parcels its duty of governing the people. [Cits.] They are local, legal, political subdivisions of the state, created out of its territory, and are arms of the state, created, organized, and existing for civil and political purposes, particularly for the purpose of administering locally the general powers and policies of the state. [Cits.] ... On the other hand, municipalities are creatures of the legislature and their existence may be established, altered, amended, enlarged or diminished, or utterly abolished by the legislature. [Cits.]" *Troup County Elec. Membership Corp. v. Ga. Power Co.,* 229 Ga. 348, 352 (191 SE2d 33) (1972).

The county does not waive this immunity in the purchase of a contract of liability insurance, even though the policy of insurance may include a clause allegedly waiving immunity. *Arnold v. Walton,* 205 Ga. 606 (54 SE2d 424) (1949); *Revels v. Tift County,* 235 Ga. 333,

---

[5]If our constitutional authority is as limited as movants suggest we could not decide the question because it has not been expressly ruled upon by a lower court.

supra.

1. (a) Yes. In *Purser v. Dodge County,* 188 Ga. 250 (3 SE2d 574) (1939), we said, "A county is not liable to suit for any cause of action unless made so by statute. [Cit.]" "It is the general rule that a county, when exercising governmental functions and acting as an agency of the state, is not liable, in the absence of statute imposing liability, for its failure to perform a duty or for its negligent performance of the duty, not even when the duty is imposed by statute; and there is no distinction in the application of this rule between the neglect to perform an act which ought to have been performed, and the performance of the duty in a negligent manner." *Bates v. Madison County,* 32 Ga. App. 370 (123 SE 158) (1924). In this connection see *Millwood v. DeKalb County,* 106 Ga. 743 (32 SE 577) (1899).

2. Yes, under the circumstances as stipulated. We have recognized in a number of cases that where a county causes a nuisance to exist which amounts to a taking of property of one of its citizens for public purposes, the county is liable. *Nalley v. Carroll County,* 135 Ga. 835 (70 SE 788) (1910); *DeKalb County v. McFarland,* 223 Ga. 196 (154 SE2d 203) (1967); *Baranan v. Fulton County,* 232 Ga. 852 (209 SE2d 188) (1974); *Fulton County v. Baranan,* 240 Ga. 837 (242 SE2d 617) (1978). However, when the nuisance does not amount to a taking for public purposes the county is not liable. *Williams v. Ga. Power Co.,* 233 Ga. 517 (212 SE2d 348) (1975); *Howard v. County of Bibb,* 127 Ga. 291 (56 SE 418) (1906).

2. (a) Yes. The theory of immunity from suit afforded a county is complete unless the suit is permitted or impliedly authorized by statute. Unless a complainant is a party to such contract, or a named beneficiary of such contract, the fact that the county may have been guilty of a nuisance in not carrying out or performing the contract between the county government and a third party affords no right of action to the complainant.

3. No. We have again reviewed the record and the assignments of error in the case of *Hancock County v. Williams,* 230 Ga. 723 (198 SE2d 659) (1973). The subsequent decision of this court in that same case, *Williams v. Ga. Power Co.,* 233 Ga. 517, supra, limiting

the holding in the earlier decision, is a correct pronouncement of the law, and anything that was said in the first decision contrary to the pronouncement made in the second decision will not be followed. Code Ann. § 3-108 provides: "As a general rule, the action on a contract, whether expressed or implied, or whether by parol or under seal, or of record, shall be brought in the name of the party in whom the legal interest in such contract is vested, and against the party who made it in person or by agent. The beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on said contract." This court said in *Backus v. Chilivis,* 236 Ga. 500, 502 (224 SE2d 370) (1976): "In order for a third party to have standing to enforce a contract under Code Ann. § 3-108 it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient. *Stewart v. Gainesville Glass Co.,* 131 Ga. App. 747, 752 (206 SE2d 857) (1974), affirmed 233 Ga. 578 (212 SE2d 377) (1975); *McWhirter Material &c. Co. v. Ga. Paper Stock Co.,* 118 Ga. App. 582, 583 (1) (164 SE2d 852) (1968)."

*Backus v. Chilivis,* supra, distinguishes the cases of *Smith v. Ledbetter Bros.,* 111 Ga. App. 238 (141 SE2d 322) (1965) and *Columbus R. Co. v. Moore,* 29 Ga. App. 79 (113 SE2d 820) (1922) and points out that these cases did not involve the question of sovereign immunity but were negligence actions involving tort liability of nongovernmental parties. The argument is made that the execution of the contract between the Federal Aviation Administration and DeKalb County, and the inclusion therein of substantial obligations on the part of the county to maintain the airport and any adjacent property in a substantial manner created a contractual duty for the benefit of the plaintiffs who were members of the public affected thereby. Practically, every contract entered into by a county is for some public benefit because the only business of the county is public business. The duties assumed by Dodge County in entering into a contract with the State of Georgia to develop a highway in that county was a contract indisputedly for the benefit of the public. Though highways may be more accepted and

more widely used than airports, they are no less dangerous, and the duty to construct and maintain one is no less important than the duty to construct and maintain the other. Yet this court squarely held in *Purser v. Dodge County,* supra, that the contract involved added nothing to the county's liability. We think that *Backus v. Chilivis,* supra, controls our opinion in this case. The county's exposure of liability to every member of the flying public, their associates, the adjoining property owners, and any other person who may happen to be in the area, is too broad to permit a contention that every injured party was an intended beneficiary under the public contract in this case. There is no intention manifested in the contract that the county compensate any member of the public for injurious consequences. Each plaintiff in these cases had no more standing than any other member of the public, and we cannot conclude that the contract was intended for the individual benefit of any claimant. See Restatement of Contracts, § 145. Also *Atlanta Gas Light Co. v. Jennings,* 86 Ga. App. 868 (72 SE2d 735) (1952), citing German Alliance Insurance Co. v. Home Water Supply Co., 226 U. S. 220 (33 SC 32, 57 LE 195); *Fowler v. Athens City Water Works Co.,* 83 Ga. 219 (9 SE 673) (1889); *Holloway v. Macon Gas Light &c. Co.,* 132 Ga. 387 (64 SE 330) (1909). The mere fact that a member of the public would have benefited from the performance does not create third party intended beneficiary status under Georgia law. *Stewart v. Gainesville Glass Co.,* 131 Ga. App. 747, 752 (206 SE2d 857) (1974), affd., 233 Ga. 578 (212 SE2d 377) (1975).

3. (a), (b), (c), (d) Having reached the conclusion that DeKalb County is immune from suit as hereinabove set forth, we find that answers to the above sub-parts of question 3 are not required.

*Certified questions Nos. 1, 1(a), 2 and 2(a) answered in the affirmative; certified question No. 3 answered in the negative. All the Justices concur, except Nichols, C. J., Jordan and Hill, JJ., who dissent.*

ARGUED APRIL 11, 1978 — DECIDED SEPTEMBER 7, 1978 — REHEARING DENIED SEPTEMBER 26, 1978.

*Johnston, Barton, Proctor, Sweldlaw & Naff, Gilbert E. Johnston, Alan Heldman, Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Jr., Jule Felton, Jr., Ross & Finch, A. Russell Blank, Baxter H. Finch, Ellis Ray Brown, Neely, Freeman & Hawkins, Joe C. Freeman, Jr., Paul M. Hawkins, William Q. Bird, Phillips, Hart & Mozley, J. Arthur Mozley,* for appellants.

*Long, Weinberg, Ansley & Wheeler, Meade Burns, F. Clay Bush, George P. Dillard, Ronald R. Glancz, George M. Fleming, William D. Mallard, Jr., Assistant U. S. Attorney, Harvey, Rhodes & Willard, Wendell K. Willard, Falk, Carruthers & Roth, Herbert S. Falk, Jr.,* for appellees.

HILL, Justice, dissenting.

I agree with the majority that we have the power to answer questions certified to us by federal courts.

However, in my view the majority opinion answers the certified questions without paying the customary and necessary attention to legal details. For example, the majority opinion acknowledges that "We have recognized in a number of cases that where a county causes a nuisance to exist which amounts to a taking of property of one of its citizens for public purposes, the county is liable." Yet the majority do not recognize that one of the plaintiffs was "the owner of the property at the crash site."

To the extent that the property at the crash site was damaged as a result of a nuisance caused by the county, the county is liable to the owner for *damaging* such property. Code Ann. § 2-301. *Fulton County v. Baranan,* 240 Ga. 837, supra.

Also, at the time of this crash, plaintiff Fields was at a nearby apartment complex about to get into his car. He alleges that as the disabled aircraft passed overhead it was spewing burning fuel which burned him over 50% of his body and destroyed his car as well as his personal belongings and business supplies. He seeks $5,500 for his car, $4,687 for his personal property, and $35,000 in medical expenses, plus unspecified damages for loss of earnings, pain and suffering and permanent disfigurement. Pursuant to the cases cited by the

majority, the county is not immune to suit where a county causes a nuisance which results in a taking of property. Thus plaintiff Field would be entitled, at a minimum, to damages for his car and other personal property . I fail to understand why the majority find that this plaintiff cannot recover property damage from DeKalb County just as Mr. Baranan did against Fulton County in *Fulton County v. Baranan,* supra.

Plaintiff Fireman's Fund Ins. Co. insured the aircraft which crashed. This insurance company alleges that it has paid the loss and sues upon an assignment of the cause of action from the aircraft owner. That owner suffered damage to its property which the insurance company has paid. The majority fail to explain why this plaintiff cannot recover property damage from DeKalb County when Mr. Baranan was allowed to do so against Fulton County in *Fulton County v. Baranan,* supra.

I submit that the property damage claims described above are maintainable against a county under existing law. Code Ann. § 2-301 provides that "Private property shall not be taken, or damaged, for public purposes, without just and adequate compensation being first paid." The operation of an airport is a public purpose as is the operation of a refuse dump. Thus, unless the majority is saying a county can take personal property without compensation, but cannot take real property, then the property damage claims described above are recoverable under existing law. (The owner of the land where the aircraft crashed is seeking recovery of damages to real property in any event.)

I, for one, would not stop there however. Having determined that Mr. Fields can recover for damage to his car, I would find it illogical that he cannot recover for his loss of earnings, medical expenses and also pain and suffering. Having determined that Fireman's Fund can recover for its property damage, I would find it intolerable that the three Miree children cannot recover for the deaths of their parents who were passengers aboard the aircraft. Having determined that the owner of the land where the aircraft struck can recover property damage, I would find it archaic that the widow of the copilot cannot recover for her loss.

For damaging private property the county is liable pursuant to the Constitution. Code Ann. § 2-301. For damages to people I would hold the county liable pursuant to the prohibition that no person shall be deprived of life, liberty or property except by due process of law. In a case such as this, the only due process available would be damages. In my view the doctrine of sovereign immunity deprives the Mirees and Mrs. Phillips (and Mr. Fields in part) of due process of law and therefore that doctrine of deprival should not be retained.

I am authorized to state that Chief Justice Nichols and Justice Jordan join in this dissent.