A05A1262. GEORGIA DEPARTMENT OF CORRECTIONS et al. v. CHATHAM COUNTY, GEORGIA.

(619 SE2d 373)

PHIPPS, Judge.

Dissatisfied because it is being reimbursed by the state for housing certain state inmates in the Chatham County Detention Center in amounts less than the actual costs of incarceration, or in no amounts whatsoever, Chatham County sued the Georgia Department of Corrections (DOC), the State Board of Pardons and Paroles (BPP), and the State of Georgia to recover $3,375,044.

Chatham County voluntarily dismissed the state as a party defendant. The DOC and BPP moved to dismiss all claims against them on the ground of sovereign immunity. The superior court dismissed all claims against the DOC and BPP except for the county's request for a judgment declaring unconstitutional OCGA §§ 42-9-49 and 42-5-51 (c); these are the Code sections pursuant to which the DOC and BPP reimburse a county for the post-trial detention costs of state felony inmates, and of the costs of detaining parole (and conditional release) violators, in amounts less than the actual expenses incurred. The DOC and BPP then moved for summary judgment as to these remaining issues, arguing that the county does not have the capacity to seek the declaratory judgment and that they are

in compliance with the challenged Code sections. The county responded to the DOC and BPP's motion for summary judgment and filed a cross-motion for summary judgment, admitting that the DOC and BPP are complying with the Code sections but challenging their constitutionality. The superior court denied all of the summary judgment motions.

We granted the DOC and BPP's application for interlocutory appeal. We conclude that although Chatham County does have standing to bring suit challenging the constitutionality of OCGA §§ 42-9-49 and 42-5-51 (c), its challenge has not been preserved for appellate review. Because Chatham County does not dispute that the DOC and BPP have complied with OCGA §§ 42-9-49 and 42-5-51 (c), the superior court erred in denying the DOC and BPP's motion for summary judgment.

Generally, any person convicted of a misdemeanor or felony offense and sentenced to serve time in a penal institution must be committed to the custody of the commissioner of corrections who, with the approval of the Board of Corrections, must designate the place of confinement where the sentence is to be served.[1] If the inmate is not transferred to such place of confinement within 15 days after proper documentation is received from the clerk of the convicting court, OCGA § 42-5-51 (c) requires the DOC to reimburse the county "in a sum not less than $7.50 per day per inmate and in such an amount as may be appropriated for this purpose by the General Assembly, for the cost of the incarceration."

OCGA § 42-9-49 requires the BPP to reimburse the county "pursuant to rules and regulations adopted by the board and in the amount appropriated for this purpose by the General Assembly, for the cost of incarceration of" any state parolee or conditional release violator who has been arrested for parole or release violations. In part, OCGA § 42-9-49 further provides that, "[t]o the extent that funds are appropriated by the General Assembly for the purpose of reimbursement of medical expenses, the board may reimburse counties for the cost of medical services provided to persons so arrested."

1. The DOC and BPP first argue that, because they are agencies of state government, Chatham County lacks the capacity to sue them. Under the facts of this case, we cannot agree.

Although counties are corporations regulated by charter, they are parts of the sovereign power of the state, clothed with public duties which belong to the state, and, as such, are mere political subdivisions of the state.[2]

---

[1] OCGA § 42-5-51 (b).

[2] *Tounsel v. State Hwy. Dept.*, 180 Ga. 112, 115 (178 SE 285) (1935); see *County of Monroe*

In *City of New York v. State of New York*,[3] relied on by Chatham County, municipal entities sued the state and state officials challenging the state statutory scheme for funding public education. The Court of Appeals of New York held that the municipalities lacked the legal capacity to sue the state because they failed to bring their claims within any exception to the general rule that municipalities lack the capacity to sue the state. The Court recognized the following exceptions: (1) where there exists an express statutory authorization to bring such suit;[4] (2) where the state legislation adversely affects a municipality's proprietary interest in a specific fund of monies; (3) where a state statute impinges upon the "home rule" powers of a municipality; and (4) where the municipality asserts that compliance with the state statute would force it to violate a constitutional proscription.[5]

This court held in *Blackmon v. Cobb County-Marietta Water Auth.*[6] that if a county-city water authority could

> be said to be an arm of the county and city it is not in position to urge the denial of equal protection, since in that event it is a creature of the State which does not enjoy the privileges and immunities afforded to its citizens. It must look to the provisions of the Act creating it and to such general laws as may apply, for all of its rights, privileges and immunities.[7]

Several years after *Blackmon* was decided, our Supreme Court held in *City of Atlanta v. Spence*[8] that although a county or municipal corporation as a creature of the legislature does not have standing to invoke the equal protection and due process clauses of the State or Federal Constitution in opposition to the will of its creator, this does

---

*v. Flynt*, 80 Ga. 489, 490 (1) (6 SE 173) (1888).

[3] 655 NE2d 649 (N.Y. 1995).

[4] In Georgia, counties have express general authority to "sue and be sued" in any court, although that does not waive their sovereign immunity. See OCGA § 36-1-3; *Self v. City of Atlanta*, 259 Ga. 78, 79-80 (1) (377 SE2d 674) (1989). Counties, however, have no express authority to sue the state, at least under the circumstances present here.

[5] See also *State of Wyoming v. Bd. of Commrs. of Johnson County*, 642 P2d 456 (Wyo. 1982) (holding that county as political subdivision of state does not have standing to bring action against state in absence of specific constitutional or statutory provision authorizing such action).

[6] 126 Ga. App. 459 (191 SE2d 128) (1972).

[7] Id. at 463 (2), citing *Williams v. Baltimore*, 289 U. S. 36 (53 SC 431, 77 LE 1015) (1933); but compare *Washington v. Seattle School Dist. No. 1*, 458 U. S. 457 (102 SC 3187, 73 LE2d 896) (1982) (allowing suit by local school districts against state challenging constitutionality of state school busing statutory initiative under federal equal protection clause).

[8] 242 Ga. 194 (249 SE2d 554) (1978).

not mean that the city does not have standing to raise other constitutional questions concerning a statute attacked by it.[9] Here, the county has challenged the constitutionality of OCGA §§ 42-4-49 and 42-5-51 (c). It is thus authorized to bring this suit.

2. The county argues that the subject Code sections violate: (1) the Gratuities Clause of the Georgia Constitution[10] by failing to provide reimbursement for the county for its full cost of housing state prisoners; and (2) the provision of the Georgia Constitution authorizing the governing authority of any county or municipality to exercise the power of taxation for limited purposes.[11]

Our Supreme Court, however, has exclusive appellate jurisdiction over cases in which the constitutionality of a law, ordinance, or constitutional provision has been drawn in question.[12] And the Supreme Court has long held that it will not rule on a constitutional question unless it clearly appears in the record that the trial court distinctly ruled on the point.[13] Here, the trial court impliedly rejected the county's constitutional challenge by denying its motion for summary judgment, as the county asserted a facial challenge to the constitutionality of the Code sections. Therefore, we neither adjudicate the constitutional challenge nor transfer the case to the Supreme Court. And because the county does not dispute that the state agencies are complying with the Code sections, the state agencies' motion for summary judgment should have been granted.

*Judgment reversed. Andrews, P. J., and Mikell, J., concur.*

DECIDED AUGUST 2, 2005.

---

[9] Id. at 195-196 (1); accord *Rogers v. Brockette*, 588 F2d 1057 (5th Cir. 1979) (holding that local school board had standing to file action against state education authorities to have state statute mandating participation in federal school breakfast program declared unconstitutional under Supremacy Clause of United States Constitution on ground that federal statute made participation voluntary).

[10] Art. III, Sec. VI, Par. VI (a) of the Ga. Const. of 1983.

[11] Art. IX, Sec. IV, Par. I (a) of the Ga. Const. of 1983. In reliance on OCGA § 48-5-220 (5), the county argues that under general law, counties are not authorized to levy and collect taxes to pay for the maintenance and support of state inmates who are the responsibility of the DOC.

[12] Art. VI, Sec. VI, Par. II (1) of the Ga. Const. of 1983. The county did challenge the facial constitutional validity of OCGA §§ 42-9-49 and 42-5-51 (c) at the trial level.

[13] See, e.g., *Santana v. Ga. Power Co.*, 269 Ga. 127, 129 (6) (498 SE2d 521) (1998), rev'd on other grounds, *Flint Elec. Membership Corp. v. Ed Smith Constr. Co.*, 270 Ga. 464 (511 SE2d 160) (1999); *Null v. State*, 216 Ga. App. 641, 643 (455 SE2d 359) (1995). Although it has been suggested that a trial court's implicit denial of a constitutional challenge should be reviewed on appeal, see *Miree v. United States*, 242 Ga. 126, 133, n. 5 (249 SE2d 573) (1978); *Hindman v. State*, 234 Ga. App. 758, 765 (5) (507 SE2d 862) (1998), the express ruling requirement remains the law.

*Thurbert E. Baker, Attorney General, Daniel M. Formby, Deputy Attorney General, John B. Ballard, Jr., William W. Banks, Jr., Assistant Attorneys General*, for appellants.

*Lee, Black, Hart & Rouse, R. Jonathan Hart, Emily E. Garrard*, for appellee.